UNITED STATES of America,
Third Party Plaintiff-
Appellee,

v.

STATE OF ILLINOIS, Third Party
Defendant-Appellant.

STATE OF ILLINOIS, Fourth Party
Plaintiff-Appellee,

v.

LLOYD'S OF LONDON, Fourth Party
Defendant-Appellant.

Nos. 18558, 18559.

United States Court of Appeals,
Seventh Circuit.

Dec. 8, 1971.

Rehearing Denied Dec. 27, 1971.

William J. Scott, Atty. Gen., Samuel E. Hirsch, Asst. Atty. Gen., Chicago, Ill., for the State of Ill.; Francis T. Crowe, Asst. Atty. Gen., of counsel.

Richard E. Mueller, Chicago, Ill., Maurice W. Kepner, Springfield, Ill., for Lloyd's of London; Lord, Bissell & Brook, Chicago, Ill., of counsel

William D. Appler, Dept. of Justice, Washington, D. C., Donald B. Mackay, U. S. Atty., Springfield, Ill., L. Patrick Gray, III, Asst. Atty. Gen., Frank J. Violanti, U. S. Atty., Walter H. Fleischer, Atty., Dept. of Justice, Washington, D. C., for United States.

Before HASTINGS, Senior Circuit Judge, and PELL and SPRECHER, Circuit Judges.

HASTINGS, Senior Circuit Judge.

This matter originated with the filing of four separate complaints on behalf of four individuals killed or injured at the 1966 Illinois State Fair, when a portion of a catwalk on top of the grandstand was pulled free from the roof during a performance by a United States Army Special Forces Unit, the Green Berets. The actions were filed against the United States of America [1] based on the alleged negligence of the Green Berets in performing their act.

United States brought a third-party action for indemnity against the State of Illinois contending that the negligence of the Green Berets, if any, was passive in nature, while Illinois was actively negligent and primarily responsi-

---

1. The complaints were brought under the Federal Tort Claims Act, Title 28, U.S.C.A. § 2671 et seq.

ble for the losses. Subsequently, Illinois in turn instituted a fourth-party action against Certain Underwriters at Lloyd's of London seeking recovery under a liability insurance policy for any amount for which Illinois might be held liable to the United States.

The four suits were consolidated for trial and were tried to the district court, without the intervention of a jury. The district court filed findings of fact, stated its conclusions of law and entered judgments thereon in favor of three of the plaintiffs against the United States in the aggregate sum of $637,847.03. After denying the motion of Illinois to dismiss the third-party complaint, the trial court held that Illinois was actively negligent as a matter of law and that the Green Berets were passively negligent, and determined that Illinois was required to reimburse the United States. The trial court further found and held that the subject insurance policy entitled Illinois to be reimbursed by Lloyd's of London.

The United States paid in full the judgments against it by plaintiffs and plaintiffs are no longer concerned in these appeals. In No. 18,558, Illinois has appealed, and in No. 18,559, Lloyd's of London has appealed.

The issues presented in No. 18,558 are (1) whether the district court had jurisdiction to implead and hear a third-party complaint for indemnity brought by the United States against the State of Illinois pursuant to Title 28, U.S.C.A. § 1345, and (2) whether the district court correctly found and held Illinois to be actively negligent and the United States to be only passively negligent and entitled to indemnity under the facts of this case.

The issue presented in No. 18,559 is essentially whether the automobile racing liability policy issued by Lloyd's of London applied to and covered the State of Illinois, not a named insured, and whether it applied to and covered the Green Beret performance in question. The United States is not a party to this appeal.

We deem it appropriate to make a brief statement of the underlying facts before proceeding to a discussion of the issues.

A Green Beret unit was invited by the manager of the Illinois State Fair to appear and perform as a part of the entertainment at the 1966 Fair on the State Fair Grounds in Springfield, Illinois. The State provided transportation, room and board for the twenty-one Green Berets who were to present two daily performance demonstrations from August 12 through August 21, 1966. The performance included, among other things, a demonstration of the techniques of traversing an open space by sliding down a rope attached at one end to a catwalk on the roof of the grandstand and kept taut by tying the other end to a truck or tractor on the ground below.

Prior to their August appearance, two officers from the unit made an inspection trip to the fairgrounds to determine how they might rig their various acts. At that time they were introduced to Ralph G. Heger, the long time manager, employed by Illinois, in charge of all the activities at the grandstand for the Fair. The officers inquired about an appropriate point to attach the elevated end of the rope to the grandstand, explaining they would need a firm place to tie down the rope used in rapelling and traversing. Heger represented to them that certain metal angle irons, which were part of the catwalk on the grandstand, were welded to the metal superstructure.[2] It was not possible then to get up on the roof to check the connection and the Fair manager did not provide the officers with available blueprints. Such blueprints would have shown that the angle irons were attached to the wooden roof with $1\frac{1}{2}''$ wood screws.

---

2. Heger's answer was "well, if you tie onto the stanchions going into the roof, the four by four steel beams going into the roof, they are welded, metal to metal to the superstructure."

When the entire Green Beret Unit arrived at the Fair on August 11, 1966, Heger directed Sergeant Rumrill, who was in charge of the rope acts, to tie the rope only to the stanchions at that time, saying this was "the only safe place to tie." Rumrill was left only with the choice of which angle iron to tie on. Heger repeated such assurances and directions. Relying on this information, the Green Berets tied their rope at that point. They were subsequently denied permission to cut through the tarpaper roof to check the metal to metal connection and later were refused permission to tie at a different point for their own convenience.

The Green Berets performed their show several times on days prior to the accident. On the day of the accident, August 20, the rope was attached at one end to the angle irons at the catwalk and at the other end to a truck which had been repositioned from previous acts, resulting in more tension on the rope. The rope was pulled more taut by driving the truck away from the grandstand. While it was being tested for tautness, the moorings of the catwalk loosened and a portion of the catwalk fell upon the grandstand and race track below.

As a result of the fall of the catwalk, two photographers who were on the catwalk and Heger, standing on the ground, were killed and two spectators in the stands were seriously injured. At the time of the accident, time trials were being conducted on the race tracks for an upcoming automobile race.

After the accident, it was discovered that the metal angle irons were not welded or attached to the metal superstructure of the grandstand as represented by Heger, but rather were attached by screws to the wooden portion of the roof. Blueprints of the grandstand on file with Illinois, but not disclosed to the Green Berets, verified this condition. The Green Berets, relying upon this misinformation by Illinois, failed to inspect the manner of the attachment of the catwalk to the roof. The trial court found, *inter alia*, that

had the angle irons been attached "metal to metal" as represented by Illinois, they would have withstood the tension placed upon them.

### No. 18,558

Illinois contends that the federal district court had no jurisdiction to implead the State of Illinois in the case at bar. It asserts immunity from such an action, claiming (1) that it is barred by the Eleventh Amendment to the Federal Constitution and by Article IV, Section 26 of the Illinois Constitution; (2) that jurisdiction under 28 U.S.C.A. § 1345 extends only to suits "commenced" by the United States, and not to a third-party action; and, (3) that Rule 14 of the Federal Rules of Civil Procedure, 28 U.S.C.A., authorized impleader only of "persons", and that the State is not a person.

In our judgment, after reviewing the relevant authorities, the claim of immunity here is misplaced and the arguments advanced have been uniformly rejected by the federal courts.

■ The Eleventh Amendment reads: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." The mere reading of this amendment makes clear that it has no application to suits brought by the United States for indemnity or for any other purpose. It applies to actions brought against a state by citizens of another state, which prohibition has now been extended to its own citizens, unless the State consents to be sued. Truitt v. State of Illinois, 7 Cir., 278 F.2d 819, 820 (1960), cert. denied, 364 U.S. 866, 81 S. Ct. 109, 5 L.Ed.2d 88, and cases cited therein.

■ As in *Truitt, supra,* in the instant case the State of Illinois did not consent to be sued and, in fact, could not so consent in view of Art. IV, § 26 of its own Constitution, S.H.A., which provides: "The State of Illinois shall never

be made defendant in any court of law or equity." Further, it may not be seriously contended that § 26, *supra*, immunizes the State from a suit by the United States. United States v. Texas, 143 U.S. 621, 646, 12 S.Ct. 488, 36 L.Ed. 285 (1892).

Congress enacted 28 U.S.C.A. § 1345 in its present form on June 25, 1948 (62 Stat. 933), which reads: "Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress." A comprehensive scholarly review of the legislative history and the constitutional aspects of this legislation, together with subsequent judicial interpretation and well reasoned commentaries thereon, appears in Circuit Judge Browning's opinion reported as United States v. State of California, 9 Cir., 328 F.2d 729 (1964), cert. denied, 379 U.S. 817, 85 S.Ct. 34, 13 L.Ed.2d 29. We follow this decision and, Congress not having otherwise provided, hold that jurisdiction is vested in the federal district courts over suits by the United States against a state. It necessarily follows that a direct action by the United States against the State of Illinois for indemnity could have been filed in the federal district court. *See* Parks v. United States, D.C.N.D.N.Y., 241 F. Supp. 297, 299 (1965).

■ The instant claim for indemnity is merely a claim by the United States that it has suffered a loss by reason of the negligence of Illinois. The district court, having jurisdiction over an original action by the United States for indemnity, would have jurisdiction over the identical claim brought as a third-party action. We find no sound basis for a contrary result based on the nebulous theory that the original action was "commenced" by other plaintiffs. *See* Chapman v. United States, D.C.N.D.Ill., No. 66–C–2335, unreported, decided May 24, 1968, a comprehensive review of the law applicable herein; Williams v. United States, D.C.S.D.N.Y., 42 F.R.D. 609 (1967); Lee v. Brooks, D.C., Hawaii, 315 F.Supp. 729 (1970); and United States v. California, *supra*. Parks v. United States, *supra*, contra on this issue.[3]

■ Finally, Illinois urges that Rule 14, *supra*, of the Federal Rules of Civil Procedure, governing third-party practice, is applicable only to "persons", and that Illinois is not a person. We find no rational basis to support this contention, since the rationale of the foregoing authorities leads to a contrary conclusion. We need not analyze them further here. It is sufficient to note that whether the State is a person within the meaning of a federal rule or statute depends upon the legislative intent. Sims v. United States, 359 U.S. 108, at page 112, 79 S. Ct. 641, at page 645, 3 L.Ed.2d 667 (1959), where the Court, in determining the meaning of the term "person" as used in a section of the Internal Revenue Code, includes a State, said that this "depends upon its legislative environment." The Court pointed out that although a statute may not expressly mention States among those it includes, it may become "equally clear that it does not *exclude* them". We conclude here, as the Court did in *Sims*, "that the subject matter, the context, the legislative history, and * * * the legislative environment, of * * * [Rule 14] makes it plain that Congress intended to and did include States within the term 'person' as used in * * * [Rule 14]." Illinois is not immune from this third-party action.

■ On the second issue, concerning *active* and *passive* negligence, we find

---

3. *Parks* appears to stand alone on this issue and has been disapproved by succeeding courts. It has been criticized by commentators, viz: 65 Col.L.Rev. 1506 (1965); 64 Mich.L.Rev. 948 (1966); and 13 U.C.L.A.L.Rev. 433 (1966).

overwhelming support in the record evidence, as earlier herein set out, that Illinois was actively negligent. The misinformation furnished the Green Berets concerning the stanchions' metal to metal connection to the grandstand roof; the requirement that the rope be tied only to the stanchions on the roof, as the only safe place; the refusal to permit the Green Berets to carefully inspect and check the connection; and the failure to make the pertinent blueprints available, all lead to the inevitable conclusion that Illinois was actively negligent and primarily responsible for this accident and resulting injuries and deaths.

On the other hand, the trial court's only finding of Government negligence was its conclusion that the "United States of America, through its agents, was negligent in that the Green Berets relied upon the representations of the agents of the State of Illinois and failed to conduct inspections adequate to reveal the manner in which the platform was affixed to the superstructure of the grandstand." While we entertain serious doubt that the Government was shown to have been negligent at all, this question has been mooted by the Government's payment of the judgments against it.

■■ Under well established Illinois law the determination of questions of active and passive negligence and their relationship to primary liability for injuries flowing therefrom are essentially questions of fact to be determined on a case by case basis. Illinois holds that "a passively negligent tort-feasor * * * [is allowed] to obtain indemnification from an actively negligent tort-feasor", Miller v. DeWitt, 37 Ill.2d 273, 289–290, 226 N.E.2d 630, 641 (1967), citing Griffiths & Son Co. v. National Fireproofing Co., 310 Ill. 331, 141 N.E. 739 (1923); Chicago and Illinois Midland Railway Co. v. Evans Const. Co., 32 Ill.2d 600,

208 N.E.2d 573 (1965). See also American Tel. and Tel. Co. v. Leveque, 30 Ill. App.2d 120, 129–130, 173 N.E.2d 737 (1961).

Under the foregoing Illinois authorities, we hold that the State of Illinois was actively negligent and the United States was passively negligent and that by virtue thereof Illinois was properly ordered to indemnify the United States of America in full for all monies paid by it in this action.

*No. 18,559*

■ Fourth-party defendant Certain Underwriters at Lloyd's of London was signatory to Policy No. CL.16042, dated August 17, 1966, issued as an Automobile Racing Liability policy to "Illinois State Fair, The Illinois State Agency, General Manager, all personnel, and the United States Auto Club." The State of Illinois is not a named assured under the policy.

Within prescribed limits, the insuring agreement of the policy provides coverage for " * * * bodily injury * * * including death * * * sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the premises stated above for the purpose of automobile racing events, including practice and time trials on reported race days."

Exclusion 7 of the policy provides that "This policy excludes liability * * * arising from * * * any event, show or exhibition other than an automobile show, exhibition or race [including practice and time trials] * * * unless specifically agreed and endorsed hereon."

Without any supporting findings of fact, the district court concluded that under this policy of insurance "coverage of the State of Illinois was contemplated", and ordered that Lloyd's of London pay to the State of Illinois "an amount

equal to the payments for damages as provided by its policy of insurance and the costs", not in excess of policy limits.

Lloyd's of London contends on appeal that the Green Berets were not conducting or using the Illinois State Fair premises for the purpose of automobile racing; that the exhibitions by the Green Berets were separate and distinct from all other grandstand shows, including the automobile race conducted by the United States Auto Club; that the Green Berets' activities were not related in any way to the 100-mile automobile race being conducted on the day of the accident at the Illinois State Fair; that under the circumstances, the policy did not apply to the liability of the State of Illinois to the United States for its failure to give warning of the grandstand's construction for the Green Berets' activities; and, *inter alia*, that Exclusion 7 of the policy excludes coverage of the State of Illinois for negligently allowing the Green Berets to use the premises for a Green Beret event.

At the outset, it is significant to note that Illinois, neither on brief nor in oral argument, in any way replied to or challenged the contentions of Lloyd's of London in this appeal. Not being a party to this appeal, it becomes obvious why the United States has not responded.

Under the facts of this case, we readily conclude that the district court erred in its mixed findings of fact and conclusions of law on this question. We hold that the subject Automobile Racing Liability policy, as a matter of law, does not apply to the liability of the State of Illinois to the United States of America, and that the judgment of the district court in this appeal should be reversed.

In light of this opinion, the judgment of the district court in appeal No. 18,558 is affirmed and in appeal No. 18,559 is reversed.

Affirmed in No. 18,558.

Reversed in No. 18,559.