**Joseph PARKS, Plaintiff, Appellee,**

v.

**UNITED STATES of America, Defendant and Third-Party Plaintiff, Appellee,**

v.

**MASSACHUSETTS MARITIME ACADEMY, Third-Party Defendant, Appellant.**

No. 85–1491.

United States Court of Appeals, First Circuit.

Argued Dec. 2, 1985.

Decided Feb. 18, 1986.

Christopher H. Worthington, Asst. Atty. Gen., with whom Francis X. Bellotti, Atty. Gen., Boston, Mass., were on brief for third-party defendant, appellant Massachusetts Maritime Academy.

Richard K. Willard, Asst. Atty. Gen., Washington, D.C., with whom William F. Weld, U.S. Atty., Boston, Mass., and Robert S. Greenspan and Mark B. Stern, Washington, D.C., were on brief for U.S.

David J. Ansel with whom David E. Meier and Flannery & Ansel, Boston, Mass., were on brief, for plaintiff, appellee.

Before COFFIN, BOWNES and TORRUELLA, Circuit Judges.

BOWNES, Circuit Judge.

Massachusetts Maritime Academy (the Academy) appeals an order of the district court entering judgment against the Academy as third-party defendant in an action brought by Joseph Parks (Parks) against the United States, third-party plaintiff.

Parks' action was filed under the Suits in Admiralty Act, 46 U.S.C. §§ 741–52, and the Public Vessels Act, 46 U.S.C. §§ 781–90. He sued to recover for hand injuries incurred in the course of his employment as Engineering Training Watch Officer on the T.S. BAYSTATE.

At the time of the accident, the T.S. BAYSTATE was on loan to the Academy pursuant to a written agreement between the Commonwealth of Massachusetts and the United States. The agreement was executed under the authority of the Maritime Academy Act of 1958, 46 U.S.C. §§ 1381 *et seq.*,[1] and it incorporated the Act's implementing regulations, 46 C.F.R. §§ 310 *et seq.* (1985).[2] The Act provides states with federal assistance to operate and maintain maritime academies for the training of Merchant Marine officers, and it authorizes the Secretary of Transportation to furnish vessels for use as training ships, 46 U.S.C. § 1382(a).[3] As a condition to obtaining the use of a vessel, state academies are required to conform to the standards for training facilities, instructors and entrance requirements set by the Maritime Administration. 46 U.S.C. § 1384(a)(2).[4]

Because the T.S. BAYSTATE was in the control and custody of the Academy at the time of the accident, and because of the duties and obligations imposed upon the Academy by statute, regulation and written agreement, the United States filed a third-party complaint against the Academy for all or part of any amount awarded to Parks in his action against it. A motion filed by the Academy to dismiss the third-party complaint on the ground that it was barred by the eleventh amendment was denied, and the case proceeded to trial.

Parks alleged that his injuries resulted from the United States' negligence. The evidence at trial showed that the accident occurred when he attempted to discover why the auxiliary generator of the ship was overheating. The testimony established that he placed his hand behind the protective guard at one end of the duct leading from the auxiliary generator room to the engine to check whether air was flowing through the duct to the engine's cooling system. His hand slid into a gap between the guard and the machinery and was severely damaged when a fan blade hit his fingers.

The court found that the guard had not been properly designed or installed so as to effectively protect against accidental contact with the machinery. It also found that Parks should have investigated using other reasonable methods for ascertaining whether air was flowing from the duct before placing his hand behind the guard. The court concluded that the United States, the Academy, and Parks had all been negligent and apportioned the relative fault between them. It attributed forty percent of the fault to Parks himself, thirty percent to the United States, for its negligence in delivering the vessel with the guard in that condition, and thirty percent to the Academy, for its failure to discover and correct the defect. Judgment was entered against

---

**1.** 46 U.S.C. §§ 1381–88 was repealed by the Maritime Education and Training Act of 1980, Pub.L. No. 96–453 § 3(j), 94 Stat. 2009 (1980). The applicable statute now is 46 U.S.C. § 1295.

**2.** The agreement provided that its terms and conditions would be "subject to all the provisions of Administration General Order 87." The provisions of General Order 87 relevant to this case are the same as those set forth at 46 C.F.R. § 310 (1985).

**3.** Now 46 U.S.C. § 1295c(c).

**4.** Now 46 U.S.C. § 1295c(f).

the United States for $23,455.34 and against the Academy for $23,455.34.

Both Parks and the Academy filed post-trial motions to alter or amend judgment. Parks' motion urged that judgment should have been entered against the United States for the full amount. He maintained that admiralty did not recognize contribution among joint tortfeasors and that the United States' claim against Massachusetts was separate and distinct from his claim against the United States. He also requested prejudgment interest. The Academy's motion urged that the subsidiary findings of the court did not support its judgment, that Parks had no direct claim against the Commonwealth, and that the United States' third-party claim was barred by the eleventh amendment. The United States filed an opposition to both motions. It opposed every ground of the Academy's motion but confined its opposition to Parks' motion to the issue of contribution. The court amended its judgment to include an award of prejudgment interest but denied the motions in all other respects.

The appeal raises three main issues: (a) whether the eleventh amendment barred the United States from impleading the Academy; (b) whether, assuming the eleventh amendment does not pose such a bar, the United States can obtain contribution or indemnity from the Academy; and (c) whether the trial court erred in awarding Parks prejudgment interest.

## I. THE ELEVENTH AMENDMENT ISSUE

■ The Academy's contention that the eleventh amendment prohibits the United States from filing a third-party complaint against the Academy is without merit. The amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Its prohibition has been extended by judicial decision to actions brought against a state by that state's own citizens, unless the state consents to be sued. *Della Grotta v. State of Rhode Island*, 781 F.2d 343, 346 n. 2 (1st Cir.1986) (citing *Atascadero State Hospital v. Scanlon*, — U.S. ——, 105 S.Ct. 3142, 3144–45, 87 L.Ed.2d 171 (1985); *Edelman v. Jordan*, 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974); *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890)). But it has never been held to apply to actions brought by the United States against a state. *See United States v. State of Illinois*, 454 F.2d 297, 300 (7th Cir.1971), *cert. denied*, 406 U.S. 918, 92 S.Ct. 1767, 32 L.Ed.2d 117 (1972). The Academy contends, nonetheless, that the United States' claim violates the spirit and intendment of the eleventh amendment as interpreted in *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). This misconstrues both the scope of the amendment and of the *Pennhurst* decision.

The *Pennhurst* opinion relied on by the Academy stemmed from the effects of an earlier opinion by the Court in the same case, *Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981). In that case, the Court reversed the Third Circuit's ruling that the conditions at Pennhurst violated, *inter alia*, the plaintiffs' rights under the Developmentally Disabled Assistance and Bill of Rights Act, 42 U.S.C. §§ 6001 *et seq.* The Court held that that Act did not create any substantive rights and remanded to the court of appeals for a determination as to whether its remedial order could be supported on the basis of the other grounds alleged in the complaint, *i.e.*, the Constitution, the Vocational Rehabilitation and Other Rehabilitation Services Act of 1973, 29 U.S.C. §§ 701–96, and the Pennsylvania Mental Health and Mental Retardation Act of 1966, Pa.Stat.Ann., tit. 50, §§ 4101–4704. On remand, the Third Circuit held that the Pennsylvania statute supported its prior judgment. It did not reach the remaining issues of federal law and it rejected the appellees' argument that the eleventh amendment barred a federal court from considering this pendent state law

claim. This latter argument was the key issue raised in Pennhurst's subsequent appeal to the Supreme Court.

The Court held for Pennhurst in a two-step opinion. First, it held that a federal court's grant of relief against state officials (the officers of Pennhurst) constituted an intrusion on state sovereignty in direct conflict with the principles of federalism underlying the eleventh amendment, 465 U.S. at 106, 104 S.Ct. at 911. Second, it held that the court of appeals' assumption that the doctrine of pendent jurisdiction gave it the right to hear the state law claims once jurisdiction was established over the federal claims was incorrect. 465 U.S. at 119. The Court stated that the doctrine had a different scope when applied to suits against a state. *Id.* at 120, 104 S.Ct. at 919. It pointed out that the eleventh amendment was an explicit limitation on the power of federal courts to decide certain claims that would otherwise be within their jurisdiction, and held that a court must examine each claim before it separately to see if its jurisdiction over any claim is barred by the eleventh amendment. *Id.* at 121, 104 S.Ct. at 919. Nothing in *Pennhurst* expands the reach of the eleventh amendment's bar to actions brought against a state by the United States.

The Academy maintains, however, that the district court's assertion of jurisdiction over the United States' third-party claim is analogous to the Third Circuit's assertion of pendent jurisdiction in *Pennhurst*. This misconstrues the nature of a third-party action. The United States' claim against the Academy was filed pursuant to Federal Rule of Civil Procedure 14(c) [5] which governs impleader in admiralty and maritime actions. It is well established that a defendant may, as third-party plaintiff, implead a party that the plaintiff could not sue directly, the claim against the third-party defendant inuring to the benefit of the third-party plaintiff and not to the original plaintiff. *See* 6 Wright and Miller, Federal Practice and Procedure § 1447 at 259 (1971). The point is well illustrated in the Seventh Circuit's opinion in *United States v. State of Illinois*, 454 F.2d 297 (7th Cir.1971). That case involved four separate complaints against the United States filed on behalf of individuals killed or injured at the Illinois State Fair. The injuries occurred when a portion of a catwalk on top of the grandstand tore free from the roof during a performance by a United States Army Special Forces Unit, the Green Berets. The complaints alleged that the Green Berets had been negligent in performing their act. The United States brought a third-party action for indemnity against the State of Illinois and claimed that the state was primarily responsible for the losses. Illinois' response, that the United States' third-party claim was barred by the eleventh amendment, was summarily disposed of by the Seventh Circuit. The court stated:

> The instant claim for indemnity is merely a claim by the United States that it has suffered a loss by reason of the negligence of Illinois. The district court, having jurisdiction over an original action by the United States for indemnity, would have jurisdiction over the identical claim brought as a third party action. We find no sound basis for a contrary result based on the nebulous theory that the original action was "commenced" by other plaintiffs.

5. Fed.R.Civ.Pro. 14(c) provides in pertinent part:

  **(c) Admiralty and Maritime Claims.** When a plaintiff asserts an admiralty or maritime claim within the meaning of Rule 9(h), the defendant or claimant, as a third-party plaintiff, may bring in a third-party defendant who may be wholly or partly liable, either to the plaintiff or to the third-party plaintiff, by way of remedy over, contribution, or otherwise on account of the same transaction, oc-

currence, or series of transactions or occurrences. In such a case the third-party plaintiff may also demand judgment against the third-party defendant in favor of the plaintiff, in which event the third-party defendant shall make his defenses to the claim of the plaintiff as well as to that of the third-party plaintiff in the manner provided in Rule 12 and the action shall proceed as if the plaintiff had commenced it against the third-party defendant as well as the third-party plaintiff.

454 F.2d at 301. We find this reasoning persuasive and dispositive of the Academy's eleventh amendment claim.

## II. THE UNITED STATES' CLAIM FOR INDEMNITY

We now consider the possible legal bases for the United States' recovery of judgment against the Academy; the district court did not identify the grounds on which it allowed the third-party claim to proceed. In doing so, we are governed by federal rather than state law because we are dealing with a maritime agreement. *See United New York Sandy Hook Pilots Association v. Rodermond Industries, Inc.*, 394 F.2d 65, 70 (3d Cir.1968). To hold otherwise would be to ignore "both the general constitutional doctrine of federal supremacy in maritime affairs, Article III, § 2, United States Constitution, and the need for uniformity in the administration of admiralty law." *Id.* at 70–71 (citing, *inter alia, Southern Pacific Co. v. Jensen*, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917); *Panama R.R. Co. v. Johnson*, 264 U.S. 375, 44 S.Ct. 391, 68 L.Ed. 748 (1924)).

■ The law of tort indemnity offers no support for the third-party claim because tort indemnity does not apply where the party seeking indemnity was itself guilty of acts or omissions proximately causing the plaintiff's injuries. *See Maritime Overseas Corp. v. Northeast Petroleum Industries, Inc.*, 706 F.2d 349, 355 (1st Cir.1983) (citing *Cooper Stevedoring, Inc. v. Kopke, Inc.*, 417 U.S. 106, 94 S.Ct. 2174, 40 L.Ed.2d 694 (1974)). We do not decide whether contribution would lie. Contribution between joint tortfeasors in a maritime action for personal injuries is only allowed where neither tortfeasor's liability is limited by statute. *See Maritime Overseas Corp.*, 706 F.2d at 351 (quoting *Araujo v. Woods Hole, Martha's Vineyard, Nantucket Steamship Authority*, 693 F.2d 1, 3 (1st Cir.1982)). The eleventh amendment makes the Academy immune from liability to Parks and we regard it as an open question whether the amendment operates as a statute so as to preclude contribution. We find solid support for the third-party claim, however in the law of contractual indemnity.

■ A contractual right to indemnity may be implied when there are "unique special factors demonstrating that the parties intended that the would-be indemnitor bear the ultimate responsibility for the plaintiff's safety, or when there is a generally recognized special relationship between the parties." *Maritime Overseas Corp. v. Northeast Petroleum Industries, Inc.*, 706 F.2d at 353 (quoting *Araujo v. Woods Hole, Martha's Vineyard, Nantucket Steamship Authority*, 693 F.2d at 2–3). This theory of implied contractual indemnity was first applied in the maritime context in *Ryan Stevedoring Co., Inc. v. Pan-Atlantic Steamship Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed.133 (1956). *Ryan* involved a suit on an oral agreement between a shipowner and stevedore under which the stevedore had agreed to perform all the stevedoring operations required by the shipowner. One of the stevedore's longshoremen, who was injured while unloading cargo pursuant to that agreement, sued the shipowner under the Longshoreman and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901 *et seq.*,[6] for failing to provide him a safe place of work. The shipowner then filed a third-party complaint against the stevedore.

The district court awarded damages to the longshoreman, an award upheld on appeal, but dismissed the third-party complaint. The court of appeals reversed that dismissal and directed that judgment be entered for the shipowner. The stevedore appealed to the Supreme Court. It advanced two arguments: (a) that the shipowner's claim for indemnity was barred by § 5 of the Longshoreman's Act, 33 U.S.C. § 905, which makes the statutory liability of an employer the exclusive remedy for an

---

6. Congress has since modified the name of the Act by changing "Longshoreman" to "Longshore." *See* Longshore and Harbor Workers'

Compensation Act Amendments of 1984, Pub.L. 98–426, § 27(d)(1), 98 Stat. 1654.

employee or anyone claiming under or through an employee on account of injury or death arising out of employment; and (b) that a stevedore should not be obliged to reimburse a shipowner in the absence of an express agreement of indemnity.

The Court rejected both arguments. It held that the Longshoreman's Act was no bar to the shipowner's third-party claim because the claim was not founded upon a duty owed by the stevedore to its employee but rather, upon the stevedore's breach of "its purely consensual obligation *owing to the shipowner* to stow the cargo in a reasonably safe manner." *Ryan*, 350 U.S. at 131–32, 76 S.Ct. at 236. The Court reasoned that an express agreement to indemnify was unnecessary because the accident occurred as a result of the stevedore's failure to meet its "consensual obligation." *Id.* at 133–34, 76 S.Ct. at 237. Liability to indemnify could, therefore, be established on the basis of that breach of contract alone. *Id.* The Court also emphasized that the stevedore could not use the shipowner's failure to discover and correct the breach of warranty as a defense in an action by the shipowner, whatever the respective obligations of the stevedore and shipowner to the longshoreman. *Id.* at 134–35, 76 S.Ct. at 237–38.

As stated by the Second Circuit in *Fairmont Shipping Corp. v. Chevron International Oil Co., Inc.*, 511 F.2d 1252 (2d Cir.), *cert. denied*, 423 U.S. 838 (1975), "*Ryan*, by necessary implication, confirmed the applicability to maritime service contracts of the hornbook rule of contract law that one who contracts to provide services impliedly agrees to perform in a diligent and workmanlike manner." 511 F.2d at 1259 (citations omitted). And *see Weyerhaeuser S.S. Co. v. Nacirema Co.*, 355 U.S. 563, 565, 78 S.Ct. 438, 439–40, 2 L.Ed.2d 491 (1958) (stevedoring contract containing no express indemnity clause, but requiring stevedore "to faithfully furnish such stevedoring services as may be required," and to

provide all necessary labor and supervision for "the proper and efficient conduct of the work," constitutes "a contractual undertaking" to perform with reasonable safety and to discharge " 'foreseeable damages resulting to the shipowner from the contractor's improper performance' " (citation omitted)).

■ The rationale for allowing indemnity on the basis of this implied contractual undertaking arises from a combination of two factors: (a) the shipowner's nondelegable duty to provide a seaworthy vessel, *see Hubbard v. Faros Fisheries, Inc.*, 626 F.2d 196, 199 (1st Cir.1980), and (b) the fact that a stevedoring company which takes control of the ship to unload it is, during the course of that operation, more capable than the shipowner of avoiding accidents. *See Maritime Overseas Corp.*, 706 F.2d at 353 (citing *Italia Societa per Azoni di Navigazione v. Oregon Stevedoring Co., Inc.*, 376 U.S. 315, 324, 84 S.Ct. 748, 754, 11 L.Ed.2d 732 (1964)). The shipowner's negligence does not bar such indemnity. 706 F.2d at 353 (quoting *Italia Societa*, 376 U.S. at 321, 84 S.Ct. at 752).[7]

Indemnity arising from an implied warranty of workmanlike service has also been applied to nonstevedoring contracts with a shipowner. In *H & H Ship Service Co. v. Weyerhaeuser Line*, 382 F.2d 711 (9th Cir. 1967), the Ninth Circuit allowed a shipowner indemnity from a ship repair contractor when the shipowner had to compensate one of the contractor's employees who was injured while working on the ship. The court found that the circumstances of supervision, expertise and control and the fact that the contractor was the party best situated to take measures to avoid the accident were sufficient to imply a warranty of workmanlike service on the part of the contractor. *Id.* at 713. It went on to hold that the shipowner could obtain indemnity from the contractor for liability incurred as a result of the contractor's breach of this warranty. *Id.*

---

**7.** Negligence on the part of the shipowner which prevents the stevedore from doing a workmanlike job, however, may preclude indemnity. *See Maritime Overseas Corp. v. North-*

*east Petroleum Industries, Inc.*, 706 F.2d at 353 (citing *Gator Marine Service Towing, Inc. v. J. Ray McDermott & Co.*, 651 F.2d 1096, 1100 (5th Cir.1981)).

The Third Circuit reached a similar conclusion in *United New York Sandy Hook Pilots Association v. Rodermond Industries, Inc.*, 394 F.2d at 74. And in *Tebbs v. Baker-Whiteley Towing Co.*, 407 F.2d 1055 (4th Cir.1969), the Fourth Circuit read an implied right of indemnity in favor of a shipowner into a contract of towage on the ground that it had surrendered supervision and control of the towing operations to the tug owner, and relied on the latter's expertise. 407 F.2d at 1059. As summed up by this court in *Maritime Overseas Corp. v. Northeast Petroleum Industries, Inc.*, application of *Ryan* indemnity rests on "elements of expertise, control, supervision and ability to prevent accidents," the nature and extent of the implied warranty of workmanlike service and any resulting indemnity, depending upon the terms of the contract giving rise to the warranty. 706 F.2d at 354 (quoting *Fairmont Shipping Corp. v. Chevron International Oil Co.*, 511 F.2d at 1257; *H & H Ship Service Co. v. Weyerhaeuser Line*, 382 F.2d at 712.) [8]

█ Careful examination of the agreement in the present case reveals all the key factors on which *Ryan* indemnity has been based. As shipowner, the United States had an absolute duty to furnish the crew of T.S. BAYSTATE with a seaworthy vessel, *Hubbard v. Faros Fisheries, Inc.*, 626 F.2d 199, and the implementing regulations of the Maritime Academy Act, 46 C.F.R. §§ 310 *et seq.* (1985), incorporated into the agreement, place the maintenance and supervision of the vessel squarely within the control of the Academy. Those regulations required the Academy to "exercise reasonable care to safeguard the interests of the [Maritime] Administration," and to avoid injury to any person aboard the T.S. BAYSTATE and "loss and damage of every nature," with respect to the vessel. § 310 4(a). The regulations also required the

Academy to: (1) conduct a condition survey with representatives of the United States, prior to the vessel's release, and then to sign a receipt for the vessel to indicate that it had been found in order, § 310 4(d); (2) to undertake usual preventive maintenance of the vessel at its own expense, § 310 4(e)(2)(i); and (3) to advise the Administration (United States) and obtain its approval of other necessary repairs, § 310 4(e)(1)(i)–(iv).

The district court found that the Academy was in breach of several of its contractual obligations. Specifically, the court found that the gap between the guard and the auxiliary diesel machinery should have been discovered and remedied in the course of the condition survey. Since the Academy had signed a certificate of delivery for the vessel, the court concluded that the Academy had either not done the required condition survey, or that it had done it negligently. The court also found that the placement of a mesh over the gap was a safety measure which the Academy had the authority to undertake. The court concluded that the Academy had been negligent and that Parks' injuries could have been avoided if the Academy had fulfilled its obligations of inspection and repair.

In light of these findings, we see no reason why the United States should not recover from the Academy on the basis of *Ryan* indemnity. Admittedly, the agreement between the United States and the Academy is not a service contract and, in that respect, differs from those in which this theory of indemnity has previously been implied. We do not, however, regard this difference as material. The Academy assumed the same degree of supervision of training operations and control of the vessel as was assumed by any of the contractors against whom such indemnity has been implied.[9] Further, as the district

---

**8.** We note that the Second Circuit holds that the shipowner's strict liability rests at the heart of *Ryan* indemnity and it has indicated that it might not allow indemnity in favor of a party whose liability was based solely on negligence. *See Fairmont Shipping Corp. v. Chevron International Oil Co.*, 511 F.2d at 1257, 1258 n. 11.

**9.** *Compare Maritime Overseas Corp. v. Northeast Petroleum Industries, Inc.*, 706 F.2d 349. In that case, we refused to allow *Maritime* to obtain indemnity from Northeast under *Ryan* for a judgment paid by *Maritime* to one of its seamen. The seaman was injured unloading a cargo from Maritime's ship which was moored at

court's findings make clear, the Academy could have prevented the accident. In these circumstances, the Academy's obligation to indemnify the United States follows from its contractual obligation to discharge foreseeable damages resulting from its improper performance. *Weyerhaeuser SS v. Naciraema,* 355 U.S. at 565, 78 S.Ct. at 439–40. The district court assessed the damages caused by the Academy's breach at $23,455.34.

## III. THE AWARD OF PREJUDGMENT INTEREST

The Academy's objections to the prejudgment interest award rest on the assumption that any award of damages against it would be based on Massachusetts law, whether in contribution or indemnity. Although it acquiesced in the award of prejudgment interest to Parks below, the United States now joins the Academy in contending that such award was error, but on different grounds. As we have upheld the United States' claim against the Academy on the basis of federal maritime law, we confine our review of the interest award to the arguments advanced by the United States on the propriety of the award under federal law. Two questions arise with regard to the award: (a) whether the United States forfeited its right to appeal this issue when it stated that it did not oppose the award of interest in its opposition to Parks' Motion to Amend Judgment; and (b) whether, assuming the issue can be raised, the award was proper.

Turning to (a), we agree with the United States that the prohibition on prejudgment interest is a jurisdictional issue which can be raised at any time. It is well established that the United States is "immune from suit save as it consents to be sued," and that "the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit," *Lehman v. Nakshian,* 453 U.S. 156, 160, 101 S.Ct. 2698, 2701, 69 L.Ed.2d 548 (1981) (quoting *United States v. Testan,* 424 U.S. 392, 399,

96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976)). It is equally well established that consent to the payment of interest is one of the terms of consent defining the court's jurisdiction. *See United States v. Goltra,* 312 U.S. 203, 207, 61 S.Ct. 487, 490, 85 L.Ed. 776, 92 Ct.Cl. 616 (1941) ("[t]his [statute previously mentioned in case] accords with the traditional immunity of the Government from the burden of interest unless it is specifically agreed upon by contract or imposed by legislation"). *See also Fischer v. Adams,* 572 F.2d 406 (1st Cir.1978) ("[t]he rule is settled that interest may be assessed against the Government only under express statutory or contractual authorization," 572 F.2d at 411 (citing *Testan,* 424 U.S. 392, 96 S.Ct. at 950 and *Goltra,* 312 U.S. 203, 61 S.Ct. 487, 85 L.Ed. 776)).

As to whether the award was proper, the United States contends that it is contrary to law because it violates the prohibition of the Public Vessels Act, 46 U.S.C. § 782, "that no interest shall be allowed on any claim up to the time of the rendition of judgment unless upon a contract expressly stipulating for the payment of interest." Parks contends that the Public Vessels Act does not govern the award because his suit was filed under both the Public Vessels Act *and* the Suits in Admiralty Act. The latter specifically provides for the award of prejudgment interest at the rate of four percent. *See* 46 U.S.C. § 743. The Supreme Court examined the relationship between these two statutes in *United States v. United Continental Tuna Corp.,* 425 U.S. 164, 96 S.Ct. 1319, 47 L.Ed.2d 653 (1976). It concluded that claims within the scope of the Public Vessels Act (enacted in 1925) remain subject to its terms, even if a party also asserts a claim under the Suits in Admiralty Act (enacted in 1960). Since Parks' action fell within the scope of both statutes, the Public Vessels Act's prohibition against prejudgment interest prevails. The judgment in favor of Parks must, therefore, be reduced by the amount of

---

Northeast's terminal. We disallowed indemnity because there was no evidence that Northeast

had a contractual duty to control or supervise the unloading operations. 706 F.2d at 354.

prejudgment interest incorrectly included in it.

Finally, we must correct the form of the judgment as entered by the district court. The United States now concedes that the district court erred when it entered judgment against the Academy in favor of Parks. Parks' complaint did not assert a claim against the Academy; the third-party complaint sought recovery in favor of the United States against the Academy. The district court's judgment must, therefore, be amended to reflect the nature of the claims asserted in the pleadings and clearly recognized in its opinion. *See* 6 Wright and Miller, Federal Practice and Procedure § 1446 at 258 (1971).

Judgment should enter in favor of Parks and against the United States for the full amount of damages awarded him below (minus prejudgment interest). In the third-party action, judgment should be entered in favor of the United States and against the Academy for half that amount.

*Affirmed in part, reversed in part, and remanded for entry of judgments consistent herewith.*

Costs awarded to plaintiff Parks and third-party plaintiff the United States against the Massachusetts Maritime Academy.