## GE CAPITAL MORTGAGE SERVICES, INC., Plaintiff,

v.

ESTATE OF Hilda LUGO, Frank Lugo, Co–Administrator for the Estate of Hilda Lugo, Edward Lugo, Co–Administrator for the Estate of Hilda Lugo, Herman Lugo, H. Maxima Lugo, Manuel Lugo, Isabel Farrar, United States of America, and Commonwealth of Massachusetts Department of Revenue, Defendants.

No. CIV.A.03–12172–JLT.

United States District Court, D. Massachusetts.

May 26, 2004.

---

Eileen Ryan McAuliffe, Massachusetts Department of Revenue, Litigation Bureau, Boston, MA, for Massachusetts Department of Revenue, Defendant.

Stephen J. Turanchik, U.S. Department of Justice, Trial Attorney, Tax Division, Washington, DC, for United States of America, Defendant.

Veronica C. Viveiros, Harmon Law Offices, P.C., Newton, MA, for G.E. Capital Mortgage Services, Inc., Plaintiff.

*MEMORANDUM*

TAURO, District Judge.

This is an interpleader action in which there are competing claims to a surplus fund, resulting from the foreclosure of a mortgage and the sale of real estate by GE Capital Mortgage Services, Inc. ("GE"). The case was instituted by GE in state court and removed to this court by Defendant United States of America ("United States").[1] Presently at issue is Defendant Commonwealth of Massachusetts Department of Revenue's ("Commonwealth") motion to dismiss.

### Background

GE was the holder of a real estate mortgage for property owned by Defendants Hilda and Manuel Lugo.[2] On April 3, 2003, GE foreclosed on the mortgaged property.[3] The property was sold to a third party at public auction for $487,000.00.[4]

On September 22, 2003, after satisfying its own debt, GE instituted an interpleader action in the Massachusetts Superior Court to determine how it should distribute the surplus funds.[5] The surplus funds total $343,402.29.[6] Among the entities that have an interest in the surplus funds are the Commonwealth and the United States. On November 5, 2003, the United States removed the state action to this court pursuant to 28 U.S.C. §§ 2410 ("section 2410") and 1444 ("section 1444").[7]

On November 19, 2003, the Commonwealth, upon finding itself a defendant in federal court in an interpleader action prosecuted by a private party, filed a motion to dismiss the entire case.[8] In its motion, the Commonwealth argues that the Eleventh Amendment to the United States Constitution ("Eleventh Amendment") bars this action against it.[9] And, the Commonwealth reasons that, if it is dismissed from the action, the entire case should be dismissed on the ground that it is an indispensable party.[10]

### Discussion

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that dismissal is appropriate where a party "fail[s] to state a claim upon which relief can be granted."[11] A claim should be dismissed pursuant to Rule 12(b)(6) "only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

---

1. · Def. Commonwealth of Mass. Commissioner of Revenue's Mem. in Supp. of its Mot. to Dismiss Entire Case ("Commonwealth's Mem.") at 1.

2. Compl. in Interpleader at 3.

3. *Id.*

4. *Id.*

5. Commonwealth's Mem. at 1.

6. Compl. in Interpleader at 3.

7. Commonwealth of Mass. Commissioner of Revenue's Reply to the Opp'n of the Pl. and the United States to Commonwealth's Mot. to Dismiss ("Commonwealth's Reply") at 2. According to 28 U.S.C. § 1444, "[a]ny action brought under [28 U.S.C. § ] 2410 . . . against the United States in any State court may be removed by the United States to the district court of the United States for the district and division in which the action is pending." And, 28 U.S.C. § 2410 provides that "the United States may be named a party in any civil action or suit in any district court, or in any State court having jurisdiction of the subject matter . . . of interpleader or in the nature of interpleader with respect to . . . real or personal property on which the United States has or claims a mortgage or other lien."

8. *See* Commonwealth of Mass.' Mot. to Dismiss Entire Case.

9. Commonwealth's Mem. at 1–2.

10. *Id.* at 2.

11. Fed.R.Civ.P. 12(b)(6).

which would entitle him to relief.' " [12] In considering a Rule 12(b)(6) motion to dismiss, "a court should not decide questions of fact." [13] Rather, it "must view the facts presented in the pleadings and all reasonable inferences to be drawn therefrom in the light most favorable to the nonmoving party." [14]

Yet, "Rule 12(b)(6) is not entirely a toothless tiger." [15] That is, its "minimal requirements are not tantamount to nonexistent requirements. The threshold may be low, but it is real—and it is the plaintiff's burden to take the step which brings his case safely into the next phase of the litigation." [16]

The question of whether a party is indispensable to an action is governed by Federal Rule of Civil Procedure 19. First, Rule 19(a) requires a court to join in a legal proceeding, as a necessary party, "[a] person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action," if the following holds true:

> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. [17]

And second, subdivision (b) of Rule 19 addresses when a necessary party constitutes an indispensable party, without whom an action cannot continue:

> If a person as described in subdivision (a) ... hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; [and] fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder. [18]

## A. Dismissal of the Commonwealth

The Commonwealth maintains that it should be dismissed from this action pursuant to the Eleventh Amendment. The Eleventh Amendment provides, in relevant part, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United

---

12. *Roeder v. Alpha Indus. Inc.*, 814 F.2d 22, 25 (1st Cir.1987) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

13. *Id.*

14. *Hathaway v. Stone*, 687 F.Supp. 708, 710 (D.Mass.1988).

15. *The Dartmouth Review v. Dartmouth Coll.*, 889 F.2d 13, 16 (1st Cir.1989).

16. *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir.1988).

17. Fed.R.Civ.P. 19(a).

18. Fed.R.Civ.P. 19(b).

States by Citizens of another State ...."[19] It "has been interpreted to constitute a general bar to suit by private individuals against unconsenting states in any tribunal, regardless of the relief sought or the legal source (federal or state) of the claim."[20] The Eleventh Amendment, therefore, acts as a jurisdictional bar to interpleader actions brought in federal court against a state, or states, by a private party or private parties.[21]

This action is, of course, a private federal court interpleader action against a state, the Commonwealth, that is being prosecuted by a private party, GE. As a result, it falls within the scope of the Eleventh Amendment. This, by itself, however, is not determinative of the matter.

█ The Supreme Court has recognized at least two circumstances in which a private action against a state may proceed in federal court. First, a state may waive its immunity by consenting to suit in federal court.[22] And second, Congress may abrogate the states' immunity and authorize suit in federal court.[23] "Congress' intent to abrogate the States' immunity from suit must be obvious from 'a clear legislative statement.'"[24]

Neither of the abovementioned exceptions apply to this case. The Commonwealth has not waived its Eleventh Amendment immunity from suit. And, this court is not aware of any express congressional abrogation of the Commonwealth's immunity.

█ The United States has, nevertheless, taken the position that the Commonwealth should be forced to defend this action. This court disagrees.

First, the United States points out that this court has subject-matter jurisdiction over this action pursuant to sections 2410 and 1444. But, even if those sections presumptively provide this court with subject-matter jurisdiction, that authority does not trump the Commonwealth's invocation of the Eleventh Amendment.

Second, the United States notes that its right to remove an interpleader action in which it has been named a party is absolute.[25] But, again, that right to remove does not trump the Commonwealth's invocation of the Eleventh Amendment.

Third, the United States argues that this action is analogous to such cases as *Barrett v. United States*[26] and *Parks v. United States*[27] in which it was deter-

19. U.S. Const. amend. XI.

20. *Horizon Bank & Trust Co. v. Flaherty*, 309 F.Supp.2d 178, 181–82 (D.Mass.2004).

21. *See Cory v. White*, 457 U.S. 85, 91, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982) ("We hold that the Eleventh Amendment bars the statutory interpleader sought in this case.").

22. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54–55, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996).

23. *See id.* at 55, 116 S.Ct. 1114.

24. *Id.* (quoting *Blatchford v. Native Vill. of Noatak*, 501 U.S. 775, 786, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991)).

25. *See Horizon Bank & Trust Co.*, 309 F.Supp.2d at 184–85 ("Congress has expressly conditioned the federal government's waiver of immunity in [private interpleader actions] on the power to remove.").

26. 853 F.2d 124, 130–31 (2d Cir.1988) ("hold[ing] that the United States' claim for contribution against New York in federal court is not barred by the eleventh amendment").

27. 784 F.2d 20, 23 (1st Cir.1986) ("The [Massachusetts Maritime] Academy's contention that the eleventh amendment prohibits the United States from filing a third-party complaint against the Academy is without merit.").

mined that a state cannot invoke the Eleventh Amendment when it is impleaded as a third-party defendant by the United States in an action brought by a private party. The United States reasons:

> The Commonwealth is in this court not because of the act of any private plaintiff, but because of the act of the most public of defendants, the United States of America, which ... has invoked the federal judicial power and removed th[is] action from the Superior Court of the Commonwealth to the United States District Court. The federal government's action in removing the case to which the state is a party is analogous to the impleaders in *Parks* and in *Barrett*, and is consistent with its right to join the Commonwealth as a defendant in an action originating in this Court.[28]

Yet, the fact that the United States removed this interpleader action to federal court does not alter the reality that the action was initiated and is being prosecuted by a private plaintiff. There is, thus, an important difference between this case and the third-party impleader cases that are mentioned above. What is more, this court's position is in accord with that of Judge Keeton when he was confronted with the same analogy that the United States is attempting to draw in this case:

The United States' attempt to characterize both removal and third-party impleader as situations in which the United States "brings the state into federal court" blurs a crucial distinction. In the removal situation, the Commonwealth continues to find itself defending against the private citizen who commenced the suit; in the impleader situation, the Commonwealth must defend itself, as a third-party defendant, only against the United States. The fact that courts have held that the Eleventh Amendment does not apply in the latter situation cannot be used as justification for the contention that it should not apply in the former.[29]

This court, therefore, holds that the United States' removal to federal court does not extinguish the Commonwealth's immunity from suit by a private party.[30]

 And fourth, the United States contends that "by waiving its sovereign immunity to be sued in ... interpleader actions [in state court], the Commonwealth's waiver is not limited solely to be sued in the Commonwealth's own courts."[31] That is, the United States insists that the Commonwealth, by waving its immunity to be sued in state court interpleader actions, has waived its Eleventh Amendment immunity to suit in federal court. This court disagrees.[32] A

---

28. United States' Opp'n to Commonwealth of Mass.' Mot. to Dismiss Entire Case ("United States' Opp'n") at 9.

29. *First Mass. Bank v. Daoust*, 214 F.Supp.2d 79, 82 (D.Mass.2002) (emphasis omitted). Judge Keeton also noted:

> The United States' contention that it can find no case barring removal to federal court based on the presence of a state as co-defendant ... is therefore something of a red herring. The question about whether removal is allowed in such a situation is a fundamentally separate question from whether that removal ... then overrides the

Eleventh Amendment rights of the co-defendant state. .
*Id.*

30. *See Horizon Bank & Trust Co.*, 2004 WL 585847, at *3; *Daoust*, 214 F.Supp.2d at 82.

31. United States' Opp'n at 13.

32. Of course, the mere fact that the Commonwealth has consented to suit in state court does not mean that there has been a waiver of its immunity to suit in federal court. *See Horizon Bank & Trust Co.*, 2004 WL 585847, at *7 ("The Supreme Court has made quite clear that a state may consent to suit in its

state can waive its immunity only through unequivocal statements or conduct.[33] The Commonwealth's consent to suit in state court interpleader actions does not rise to the level of unequivocal consent to suit in federal court.

■ Moreover, the cases that the United States cites in support of its waiver argument, *Bates v. Director of the Office of Campaign and Political Finance,*[34] *Arizona v. Manypenny,*[35] and *Minnesota v. United States,*[36] are distinguishable, as the Eleventh Amendment's jurisdictional barrier was not an issue in any of them. And, perhaps most significantly, the Eleventh Amendment, by its terms, bars "*any* suit in law or equity, commenced or prosecuted

against one of the United States by Citizens of another State . . . ."[37] The Eleventh Amendment does not differentiate between suits that originate in federal court and suits that properly originate in state court and are later removed to federal court. It is, therefore, irrelevant that this action, as it relates to the Commonwealth, was properly initiated and could have been prosecuted in state court. The removal of the action to federal court necessarily implicates the Eleventh Amendment's jurisdictional bar.

### B. *Dismissal of the Case*

The Commonwealth maintains that, because the Eleventh Amendment requires

---

own courts without extending that consent to federal courts.") (citing *College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 675–76, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999)).

**33.** *Id.* at *6; *see Lapides v. Bd. of Regents of the Univ. Sys. of Ga.,* 535 U.S. 613, 624, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002); *Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

**34.** 436 Mass. 144, 763 N.E.2d 6 (2002). In *Bates,* the issue was whether the Massachusetts Legislature had to appropriate money to candidates for public office who satisfied the certification process under the Clean Elections Law, which was enacted by popular initiative. The defendants argued that because there was no explicit waiver of the Commonwealth's sovereign immunity in the statute, the suit could not continue. The Massachusetts Supreme Judicial Court disagreed. It concluded:

> [T]he abrogation of sovereign immunity is inherent in the certification process and in the regulatory purpose of the statute . . . . The power to bind the Commonwealth to payments of public funds by the process of certification is required "by necessary implication" from the clean elections law . . . . We will not impute to the voters who enacted the clean elections law an "intention to pass an ineffective statute."

*Id.* at 27 (internal citations omitted).

**35.** 451 U.S. 232, 101 S.Ct. 1657, 68 L.Ed.2d 58 (1981). The *Manypenny* case "involved a federal officer who, when the State of Arizona commenced a state-law criminal prosecution against him in state court, removed to federal court . . . . The Supreme Court held that, in such circumstances, 'the invocation of removal jurisdiction . . . does not revise or alter the underlying [substantive] law to be applied.' " *Horizon Bank & Trust Co.,* 2004 WL 585847, at *6 (internal citation omitted) (quoting *Manypenny,* 451 U.S. at 242, 101 S.Ct. 1657) (alterations in original).

**36.** 305 U.S. 382, 59 S.Ct. 292, 83 L.Ed. 235 (1939). In the *Minnesota* case,

> a state brought a condemnation proceeding in state court, involving property in which the United States had an interest. The state court lacked subject matter jurisdiction, because such cases had to include the United States [as] a party, and the United States had only consented to such suits in federal court. The case was removed to federal court. The Supreme Court held that the removal court had to dismiss the case, even though it would have had jurisdiction had the action been filed in federal court, because the removal court's jurisdiction was "derivative" of the state court's jurisdiction.

*Horizon Bank & Trust Co.,* 309 F.Supp.2d at 178 (internal citations omitted).

**37.** U.S. Const. amend. XI (emphasis added).

that it be dismissed from this action, this court should dismiss the entire case on the ground that the Commonwealth is an indispensable party under Fed.R.Civ.P. 19(b). The United States, however, questions whether the Commonwealth has standing to ask this court to dismiss the entire action. It suggests that the Commonwealth "is not entitled first to seek its own dismissal, and then, if successful, to seek dismissal of the entire action ...." [38] But, when the Commonwealth filed its motion to dismiss, it was a party to the action and, thus, had standing to make both requests. Although, as a practical matter, this court considered the Commonwealth's argument as to why it should be dismissed before it addressed the Commonwealth's argument as to why the entire action should be dismissed, the order in which this court considered those requests does not affect the Commonwealth's standing.

This court will now address the Commonwealth's indispensable party argument. The Commonwealth is clearly a necessary party under Fed.R.Civ.P. 19(a), as "any disposition in its absence could

possibly subject [GE]—and any recipient of the proceeds of the foreclosure sale at issue here—to a substantial risk of 'incurring double, multiple[,] or otherwise inconsistent obligations.'" [39] The issue that remains, however, is whether the Commonwealth is an indispensable party, without whom this action cannot continue.

Chief Judge Young, when recently confronted with this precise issue in a strikingly similar case, determined that the Commonwealth was not an indispensable party and, for that reason, refused to dismiss the entire action.[40] He concluded that "the gestalt factors [that are listed in Rule 19(b)] weigh in favor of proceeding to judgment ...." [41] To be sure, he recognized that there are undesirable consequences associated with that course of action.[42] Yet, after examining the alternatives, he decided that "proceeding to judgment ... provides the most complete and efficient resolution of the controversy that is possible, with less danger of inconsistency than any other available course of action." [43]

---

**38.** United States' Opp'n at 19.

**39.** *Horizon Bank & Trust Co.,* 309 F.Supp.2d at 191–92 (quoting Fed.R.Civ.P. 19(a)); *see also* Commonwealth's Reply at 8 (noting that "[i]f this action were to continue without the Commonwealth, the parties would proceed at their own peril because the state tax liens would not be discharged leaving both the plaintiff and any recipient of the interpleader funds potentially liable to the Commonwealth").

**40.** *See Horizon Bank & Trust Co.,* 309 F.Supp.2d at 178–92.

**41.** *Id.* at 198; *see supra* note 18 and accompanying text.

**42.** *See, e.g., Horizon Bank & Trust Co.,* 309 F.Supp.2d at 195. For example, "a federal court judgment ... leaves [the nongovernmental parties] open to later claims by the Commonwealth." *Id.*

**43.** *Id.* at 196. In examining the alternatives to federal court adjudication, Chief Judge Young observed:

> [To] remand to state court for a final judgment there[] produces virtually the same problems as would a federal court judgment. A remand would in essence constitute a holding that the United States cannot remove the interpleader action. Because the United States has conditioned its waiver of sovereign immunity on the right to remove, [*see Hood v. United States,* 256 F.2d 522, 526 (9th Cir.1958); *Hamlin v. Hamlin,* 237 F.Supp. 299, 300 (N.D.Miss.1964),] the United States would presumably be entitled to invoke its own sovereign immunity and get itself dismissed as a party.... [I]t[, therefore,] ... cannot be said that federal court adjudication is likely to produce a less adequate judgment than remand.

*Horizon Bank & Trust Co.,* 309 F.Supp.2d at 195. He also found:

> The ... option [of] dismiss[ing] the case ... is plainly inferior to a judgment in one

■ Chief Judge Young's sound rationale is applicable here as well. This action, therefore, will not be dismissed on the ground that the Commonwealth is an indispensable party.

## Conclusion

For the foregoing reasons, the Commonwealth's motion to dismiss is ALLOWED to the extent that the Commonwealth is dismissed as a party to this action. The Commonwealth's motion to dismiss is otherwise DENIED.

AN ORDER WILL ISSUE.

court (federal or state), which would resolve the private parties' relative claims as against one another and as against one of the sovereigns, and would clarify the comparative claims of the two sovereigns. Out of the manifold combinations of relative claims, the only ones remaining unresolved in such a judgment would be those between the private individuals and one of the sovereigns. At worst, there might be a second lawsuit in that sovereign's courts. In the case of dismissal, however, no claims whatsoever can be resolved. Each party acts at its peril, subject to lawsuits by any one of the other parties. Whatever evils proceeding to judgment or remanding might produce, dismissal of the entire case multiplies them several-fold. This is clearly a case where incomplete relief is better than no relief at all.... [And], because the United States has priority over the Commonwealth, [*see* Compl. in Interpleader at 4,] resolving the United States' claim may well make it difficult for the Commonwealth to subject the private individuals in this case to inconsistent obligations in later proceedings. *Id.* at 194–96.