In the

# United States Court of Appeals

### For the Seventh Circuit

Nos. 11-1541 & 11-1638

CHAUNTE OTT,

*Plaintiff-Appellee,*

*v.*

CITY OF MILWAUKEE, *et al.*,

*Defendants.*

APPEALS OF:

WISCONSIN DEPARTMENT OF CORRECTIONS
and WISCONSIN STATE CRIME LABORATORY,

*Appellants.*

Appeals from the United States District Court
for the Eastern District of Wisconsin.
No. 2:09-CV-00870-RTR—**Rudolph T. Randa**, *Judge.*

ARGUED SEPTEMBER 28, 2011—DECIDED MAY 29, 2012

Before BAUER, WOOD, and TINDER, *Circuit Judges.*

WOOD, *Circuit Judge.* Following his vindication after his wrongful conviction and incarceration for the 1995 murder of Jessica Payne, Chaunte Ott brought a civil rights action against the City of Milwaukee and several

police officers. That case is still pending. This appeal was filed when Ott served subpoenas on two non-party state agencies, the Wisconsin Crime Laboratory and the Wisconsin Department of Corrections. Rather than comply, the state agencies filed motions to quash. The district court denied those motions, at which point the state agencies filed this appeal, invoking jurisdiction under the collateral-order doctrine. We conclude that this is not a proper case for that basis of jurisdiction, in light of the Supreme Court's decision in *Mohawk Industries, Inc. v. Carpenter*, 130 S. Ct. 599 (2009). We add that even if we have read *Mohawk Industries* too strictly and jurisdiction is proper, we would find that the state agencies' arguments lack merit.

**I**

Ott served 13 years for the murder of Jessica Payne before DNA evidence exonerated him. The State of Wisconsin dropped all charges against him in 2009 after a Wisconsin appellate court held that he was entitled to a new trial. Shortly thereafter, the Milwaukee Police Department announced that it had connected the DNA found on nine victims, including Payne, to Walter E. Ellis. In light of that finding and his exoneration, Ott filed an action under 42 U.S.C. § 1983 against several Milwaukee police officers and the City of Milwaukee; he sought damages for his wrongful conviction and incarceration. In furtherance of those claims, Ott served subpoenas on the Wisconsin Crime Laboratory and the Wisconsin Department of Corrections pursuant to Federal Rule of Civil Procedure 45, in an effort to obtain documents

associated with the DNA testing of Ellis. (We note that these entities lie within 100 miles of the courthouse, see FED. R. CIV. P. 45(b)(2)(B), and so there is no doubt that they were part of the pending action.)

The state agencies moved to quash the subpoenas, arguing that they are not "persons" subject to Rule 45 and that Ott's service by certified mail was invalid. The district court denied that motion. The state agencies then moved to amend the court's order on the ground that they had preserved additional substantive objections that they had not previously raised. The district court rejected the additional arguments as untimely, but it nevertheless allowed the state agencies to submit briefs on the question whether special circumstances warranted an exception to waiver. After reviewing that submission, the court concluded that the state agencies were not entitled to an exception and it ordered the production of the subpoenaed materials. The state agencies then filed this appeal.

## II

We consider first whether the state agencies' appeal is properly before this court. The state agencies assert that it is, noting that this court has held that nonparties may directly appeal adverse final discovery orders before final judgment is entered in the underlying case. See *Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122, 1125 (7th Cir. 1997) ("When the order is directed against a nonparty, as it is here, [the nonparty] has no appellate remedy at the end of the litigation, so he is entitled to

appeal immediately."). Ott responds that the Supreme Court's decision in *Mohawk Industries, Inc. v. Carpenter*, 130 S. Ct. 599 (2009), has effectively overruled this court's position on the issue.

Collateral-order review is based on a "practical" construction of 28 U.S.C. § 1291; it is not an exception to the final-judgment rule. *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949); *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994). Immediate finality exists only for orders "that are conclusive, that resolve important questions completely separate from the merits, and that would render such important questions effectively unreviewable on appeal from final judgment in the underlying action." *Digital Equip.*, 511 U.S. at 867. The Supreme Court recently emphasized the narrow scope of the doctrine in *Mohawk Industries*, where it held that a collateral-order appeal was not available to review an order that may violate the attorney-client privilege. The Court deemed postjudgment appeal sufficient to protect the interests associated with that privilege. If a party is particularly concerned about turning over privileged materials, the Court noted, there are other alternatives available, such as an interlocutory appeal under 28 U.S.C. § 1292(b), a writ of mandamus, or an appeal from a contempt citation. *Id*. at 608. The overriding lesson from *Mohawk Industries* is that "the class of collaterally appealable orders must remain 'narrow and selective in its membership.'" *Id*. at 609, quoting *Will v. Hallock*, 546 U.S. 345, 350 (2006). The adversely affected party is expected to put its money where its mouth is, so to speak, before an appeal will be heard.

Just as a party asserting attorney-client privilege is compelled to use a method other than a collateral-order appeal if it wants to avoid turning over certain documents, so in our view must the state agencies resist their subpoena orders more definitively before this court may exercise jurisdiction. It might be enough that the state agencies may resist compliance and risk a contempt order, if they feel strongly that a prejudgment appeal is necessary. *Motorola, Inc. v. Computer Displays Int'l, Inc.*, 739 F.2d 1149, 1154 (7th Cir. 1984) ("An order finding a party in civil contempt disposes of all the issues raised only if it includes both a finding of contempt *and* the imposition of a sanction.").

There is no risk of an unwarranted intrusion on state sovereignty associated with this course of action; notably, the two state agencies here were acting as the agents of the City's Police Department, and Ott's suit against the City and its officers falls comfortably within federal authority. It is well understood that "courts have inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966); see also *Young v. United States ex rel. Vuitton et Fils, S.A.*, 481 U.S. 787, 794 (1987) ("[I]t is long settled that courts possess inherent authority to initiate contempt proceedings for disobedience to their orders."). We know for a fact that state entities are not unfamiliar with the possibility of contempt proceedings arising out of their failure to obey federal court orders. *Bailey v. Roob*, 567 F.3d 930, 937-38 (7th Cir. 2009) (discussing the possibility of contempt proceedings against state agency arising out of

consent decree); *Power v. Summers*, 226 F.3d 815, 819 (7th Cir. 2000) (concluding that injunction against state may be enforced by contempt citation).

We find immaterial the fact that this case involves a discovery order directed at nonparties whereas *Mohawk Industries* involved parties to the case. Under the facts presented here, the state agencies' interests in protecting their privileged materials are as strong as those of a party. Ott seeks documents created by the agencies and that are in their possession. There is no risk that the agencies lack the proper incentives to protect the subpoenaed materials. The Supreme Court's concern that "piecemeal, prejudgment appeals . . . undermine[] 'efficient judicial administration' and encroach[] upon the prerogatives of district court judges" applies with equal force to the nonparties subject to the discovery orders in this case. *Mohawk Industries*, 130 S. Ct. at 605, quoting *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374 (1981).

## III

### A

If perchance we have read *Mohawk Industries* too strictly and the Court meant to leave a wider door open for collateral-order appeals brought by nonparties, or if the state agencies meant to invoke sovereign immunity through their reference to "persons," we would nonetheless reject their position on the merits. This court reviews a district court's order refusing to quash a sub-

poena for abuse of discretion. *United States v. Lloyd*, 71 F.3d 1256, 1268 (7th Cir. 1995). We review the district court's interpretation of Rule 45 *de novo*. *Pickett v. Sheridan Health Care Ctr.*, 610 F.3d 434, 440 (7th Cir. 2010).

Rule 45 establishes the proper procedure for issuing subpoenas. Relevant to this appeal, it requires the subpoena to "command each *person* to whom it is directed to do [certain things]." FED. R. CIV. P. 45(a)(1)(A)(iii) (emphasis added). Similarly, Rule 45(c) is titled, "Protecting a Person Subject to a Subpoena." The state agencies argue that they are not "persons" subject to subpoenas under Rule 45. The district court rejected their argument, relying on the D.C. Circuit's recent opinion on this question.

The D.C. Circuit—the only court of appeals that has considered this issue—held that a federal agency is a "person" under Rule 45. *Yousuf v. Samantar*, 451 F.3d 248 (D.C. Cir. 2006). Overturning a district court decision to the contrary, the court of appeals initially rejected the district court's use of the presumption that the federal government is not a "person" within Rule 45. Citing *Nardone v. United States*, 302 U.S. 379 (1937), it recalled that the government at common law was presumed not to be a statutory "person" in two situations: "(1) where the statute, if not so limited, would deprive the sovereign of a recognized or established prerogative title or interest, such as a statute of limitations; and (2) where deeming the Government a person would work obvious absurdity as, for example, the application

of a speed law to a policeman pursuing a criminal or the driver of a fire engine responding to an alarm." *Yousuf*, 415 F.3d at 254 (internal quotations omitted). The court found neither situation applicable to Rule 45, particularly because the federal government lacks an "established prerogative" to be free from subpoenas. *Id*. The court then went on to conclude that the term "persons" used elsewhere in the Federal Rules of Civil Procedure contemplates the inclusion of the government. *Id*. at 255-56.

The question remains whether the holding and reasoning of *Yousuf* may be extended to state agencies. The first question is whether Rule 45 implicates state interests that would trigger a *Nardone* presumption. We think not: we can think of no "established prerogative" of the Wisconsin Crime Laboratory or the Wisconsin Department of Corrections that would be imperiled by the application of Rule 45 to either one. Ott could have demanded the same documents by issuing a subpoena to the correct employee in each agency, as the agencies admit in their brief. No state sovereign immunity issues are triggered by this subpoena because no ultimate relief is being sought from them. In addition, there is no reason to believe that the application of Rule 45 would work an "obvious absurdity," especially since Ott could have obtained the same documents with a minor change in the addressee of the subpoena.

With the *Nardone* presumption out of the way, the next issue to examine is whether the interpretation used in *Yousuf* for an agency of the United States applies with equal force to state agencies. We have previously held

that states and state agencies qualify as "persons" under the other civil procedure rules. *Tillman v. City of Milwaukee*, 715 F.2d 354 (7th Cir. 1983) (Wisconsin agency was a "person" within Federal Rule of Civil Procedure 19(a) as a required party); *United States v. Illinois*, 454 F.2d 297 (7th Cir. 1971) (the State of Illinois was a "person" within Federal Rule of Civil Procedure 14). There is no reason to refrain from applying the holdings in *Illinois* and *Tillman* to Rule 45. The Supreme Court has determined that whether a governmental entity qualifies as a "person" is dependent on the rule's "legislative environment." *Sims v. United States*, 359 U.S. 108, 112 (1959). As we have noted, "[A]lthough a statute may not expressly mention States among those it includes, it may become 'equally clear that it does not *exclude* them.'" *Illinois*, 454 F.2d at 301, quoting *Sims*, 359 U.S. at 112. The history and purpose of Rule 45 indicates no legislative intent to exclude states from the subpoena power of the federal courts. 9C CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2451, at 383 (3d ed. 2008). On the record before us, therefore, it appears that the state agencies are subject to the district court's subpoena power under Rule 45.

B

The state agencies do not dispute that they received the subpoenas via certified mail. They argue, however, that the subpoenas must be quashed as a matter of law because they read Rule 45(b)(1) to prohibit service by certified mail. In fact, as a quick examination of the language of the Rule reveals, it never says that, but we

proceed on the assumption that the agencies really mean to argue for an implicit ban on this method of service. Here is what the Rule says:

> Any person who is at least 18 years old and not a party may serve a subpoena. Serving a subpoena requires delivering a copy to the named person and, if the subpoena requires that person's attendance, tendering the fees for 1 day's attendance and the mileage allowed by law.

Many courts have interpreted this language (and its predecessors before the 2007 restyling of the rules) literally to require nothing short of personal service. *In re Dennis*, 330 F.3d 696, 704-05 (5th Cir. 2003). But the first question is personal service by whom? An agent of the postal service surely qualifies as a "person at least 18 years of age and not a party." And certified mail is a service that provides the sender with a mailing receipt; the Post Office also maintains a proof-of-delivery record with a copy of the recipient's signature for two years from the date of mailing. USPS, Frequently Asked Questions, http://faq.usps.com/ (last visited May 23, 2012). We see no reason to inflate the costs of litigation by ruling out this sensible option for serving a subpoena (along with the necessary fees) and requiring parties to hire a second person for service, at least in the absence of any language in the Rule that compels such a result.

Our conclusion is reinforced by a quick comparison of the language in Rule 45(b)(1) with that in Rule 4(e), which specifies various ways in which an individual

within a judicial district of the United States may be served with a summons. Those methods include "delivering a copy of the summons and of the complaint to the individual *personally*." FED. R. CIV. P. 4(e)(2)(A) (emphasis added). Ott persuasively argues that the use of the word "personally" in that part of Rule 4 would be "pure surplusage" if Rule 45(b) were interpreted to require personal delivery by a specially designated agent.

## C

The state agencies' final argument is that the district court erred in finding that they waived all substantive objections to the subpoenas. They note that their motion to quash included an express reservation of the right to assert substantive objections if the motion failed on procedural grounds. The district court found the objections untimely. The state agencies complain that this was improper, despite the fact that the district court had already granted them additional time.

The question for us is whether a cursory reservation of the right to assert substantive objections later is sufficient to preserve those arguments. Critically, the state agencies even now have not revealed what specific "substantive objections" they are talking about. If they are referring to privilege arguments, they are too late: Rule 45(d)(2) says that "[a] person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must expressly make the claim; and describe the nature of the withheld documents . . . in a manner that, without

revealing information itself privileged or protected, will enable the parties to assess the claim." The state agencies' brief and broad reservation of rights is insufficient to satisfy this requirement. Even if they are referring to other arguments, the district court was entitled to draw the line where it did. The Second Circuit has noted that Rule 45 "require[s] the recipient of a subpoena to raise all objections at once, rather than in staggered batches, so that discovery does not become a 'game.'" *In re DG Acquisition Corp.*, 151 F.3d 75, 81 (2d Cir. 1998), quoting *United States v. Bryan*, 339 U.S. 323, 331 (1950). That is why Rule 45(c)(2)(B) requires the objecting party to raise its objection before "the earlier of the time specified for compliance or 14 days after the subpoena is served." The state agencies have not offered any reason for failing to spell out all of their objections in their initial or amended motion to quash.

## IV

We conclude that we lack jurisdiction to rule on the state agencies' appeal. Moreover, even if *Mohawk Industries* or another theory would permit the appeal, we would find that the state agencies' arguments lack merit. We therefore DISMISS the appeal for want of jurisdiction.