In the

# United States Court of Appeals
## For the Seventh Circuit

—————————

No. 13-1279

LYNETTE WILSON, individually
and as Administratrix of the
Estate of Raul Adan Barriera,
deceased,

*Plaintiff-Appellant*,

*v.*

CITY OF CHICAGO, *et al.*,

*Defendants-Appellees*.

—————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 07 C 1682 — **Joan Humphrey Lefkow**, *Judge*.

—————————

ARGUED APRIL 10, 2014 — DECIDED JULY 14, 2014

—————————

Before CUDAHY and EASTERBROOK, *Circuit Judges*, and
LAWRENCE, *District Judge*.[*]

———————————

[*] Of the Southern District of Indiana, sitting by designation.

LAWRENCE, *District Judge.* This case arises out of the fatal shooting of Raul Barriera by a Chicago police officer. Barriera's mother, Lynette Wilson, filed suit on behalf of herself and Barriera's estate against the City of Chicago and the officers who were present at the scene: Andrew Hurman, David Cummens, and Donald Jerome. Wilson ultimately asserted the following claims at trial: (1) a claim against the police officers pursuant to § 1983 for excessive force in violation of the Fourth Amendment; (2) a claim for wrongful death against the police officers pursuant to Illinois law; (3) a claim under the Illinois Survival Statute against the police officers; and (4) a claim that the City was liable for the torts of the officers under the theory of *respondeat superior*. The jury found in favor of the defendants on each of Wilson's claims, and the district court denied Wilson's motions for a new trial and for judgment as a matter of law.[1] Wilson now appeals, asserting that the trial court made several incorrect evidentiary rulings and erred in various respects regarding the manner in which it instructed the jury. We affirm.

## I. BACKGROUND

On the morning of February 28, 2007, Barriera barricaded himself in his bedroom. Barriera, who had been diagnosed with schizophrenia three years earlier, had not been taking his medicine regularly, and his mother feared he might harm himself. When the efforts of his mother, grandmother, and brother to convince him to leave his room were unsuccessful, Wilson called 911 for assistance.

---

[1] The trial was conducted by Judge William Hibbler. After his death, the case was reassigned to Judge Joan Lefkow, who denied the post-trial motions.

When paramedics and firefighters arrived, Wilson explained her fear that Barriera might be suicidal because he was not taking his medication. After unsuccessfully trying to coax Barriera out of his room, a firefighter attempted to open the bedroom door and found that something was blocking it; with some effort he was able to open it enough to observe Barriera holding a hunting knife and moving around the room. The firefighter called for police assistance and held the door closed until officers arrived.

Defendants Hurman and Cummens arrived a few minutes later. The parties disagree regarding how events unfolded next, but we must view the evidence in the light that supports the jury's verdict. *Common v. City of Chicago*, 661 F.3d 940, 942 (7th Cir. 2011) (citing *Matthews v. Wisconsin Energy Corp., Inc.*, 642 F.3d 565, 567 (7th Cir. 2011)). The officers worked for several minutes to persuade Barriera to leave his room, but were unsuccessful. A short time later, Jerome arrived. He deployed his taser through the partially open bedroom door, hitting Barriera as he stood about seven feet from the door. Barriera removed the taser prongs from his chest. About thirty seconds later, he lunged at the officers with the knife in his hand. Fearing for their lives, Jerome deployed the taser and Hurman fired two shots from his weapon. Barriera was struck by the taser prongs and both bullets. The officers entered the bedroom, knocked the knife from Barriera's hand, and handcuffed him so he could be transported to the hospital. Barriera later died from the injuries he sustained.

## II. DISCUSSION

Wilson raises four enumerated issues on appeal. Three of them relate to the district court's jury instructions regarding

her wrongful death claim; the fourth addresses several evidentiary rulings that Wilson argues were erroneous and prejudicial to her. We address each argument, in turn, below.

## A. Wrongful Death Instructions

When reviewing errors relating to jury instructions, "[w]e consider the instructions as a whole, analyzing them deferentially to determine whether they accurately state the law and do not confuse the jury." *Rapold v. Baxter Int'l, Inc.*, 718 F.3d 602, 609 (7th Cir. 2013). "The standard of review is a liberal one: we look at jury instructions only to determine if taken as a whole they were sufficient correctly to inform the jury of the applicable law. Even if the instruction contains errors or misguides the jury, the error is reversible only if a litigant is prejudiced." *Id.* (citations and internal quotation marks omitted). While the parties approach the issues from several angles—discussing at length, for example, whether certain arguments were waived and whether the district court should have applied Rule 16(e)'s "manifest injustice" standard—the question before us boils down to whether the court's instructions properly set out the law with regard to Wilson's wrongful death claim.

We begin, then, with what the applicable law is. The Illinois Wrongful Death Act provides a mechanism for suit to be brought by the personal representative of a decedent whose death was "caused by wrongful act, neglect, or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof." 740 ILCS 180/1. In this case, the "wrongful act" at issue was the shooting of Barriera by Hurman; if Hurman would have

been liable to Barriera for the tort of battery had Barriera survived the shooting, he would be liable to Wilson under the wrongful death statute. Thus, Wilson had the burden of proving the elements of the civil tort of battery, which, in its simplest terms, is defined as "the unauthorized touching of the person of another." *Curtis v. Jaskey*, 759 N.E.2d 962, 964 (Ill. App. Ct. 2001). In addition, the Defendants asserted the affirmative defense of immunity under § 2-202 of the Illinois Local Governmental and Governmental Employees Tort Immunity Act ("Immunity Act"), which provides that "[a] public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2–202. Wilson does not dispute that she had the burden of proving that Hurman acted willfully and wantonly.

With the applicable law in mind, we turn to the district court's instructions. The jury was first instructed that Wilson had the burden of proving that Barriera was injured as a result of Hurman's willful and wanton conduct. The following instructions were then given:

> The Plaintiff, Lynette Wilson, as Administrator of the estate of Raul Barriera, deceased, claims that she was injured and sustained damage and that the conduct of defendant Officer Hurman was willful and wanton in the following respect:
>
> 1. Shot the decedent, Raul Barriera, without justification in that he lacked a reasonable belief that such force was necessary to prevent imminent death or great bodily harm to himself or to others.

…

> When I use the expression willful and wanton, I mean a course of action which shows an utter indifference to or conscious disregard for the safety of others.

Wilson argues that these instructions were erroneous in several respects.

Wilson first argues that the district court improperly shifted the burden of proof to her to disprove the affirmative defense of justification. The question of which party bears the burden of proof on that issue in a case in which immunity under the Immunity Act is asserted is, of course, one of Illinois law. Because the Illinois Supreme Court has not addressed the issue, "we are called upon to predict how that court would decide if presented with the same question." *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005).

> In the absence of guiding decisions by the state's highest court, we consult and follow the decisions of intermediate appellate courts unless there is a convincing reason to predict the state's highest court would disagree. *See Fidelity Union Trust Co. v. Field*, 311 U.S. 169, 177–78 (1940) ("An intermediate state court in declaring and applying the state law is acting as an organ of the State and its determination, in the absence of more convincing evidence of what the state law is, should be followed by a federal court in deciding a state question."); *Klunk v. County of St. Joseph*, 170 F.3d 772, 777 (7th Cir. 1999) ("To the extent that the state's highest court has not addressed an issue, we examine the decisions of the lower state courts.").

*ADT Sec. Servs., Inc. v. Lisle-Woodridge Fire Protection Dist.*, 672 F.3d 492, 498 (7th Cir. 2012).

　　The Illinois Court of Appeals recently addressed the precise issue raised by Wilson in *Davis v. City of Chicago*, 8 N.E.3d 120 (Ill. Ct. App. 2014), *reh'g denied*, another case involving a wrongful death claim arising out of a fatal police shooting. There, as here, the defendants asserted immunity under 745 ILCS 10/2-202 and the plaintiff argued that it was error for the trial court to instruct the jury that the plaintiff had the burden of proving that the officer acted "without legal justification."[2] The Illinois Court of Appeals rejected that argument, holding that requiring the plaintiff to prove that the officer acted without legal justification "harmonized [the] plaintiff's burden of proof on her battery claim to prove the contact was unauthorized, the affirmative defense of immunity … and the plaintiff's burden to prove willful and wanton conduct, while accounting for self-defense or legal justification as a legally authorized contact." *Davis*, 8 N.E.3d at 148. We see no convincing reason to believe the Illinois Supreme Court would disagree with this holding. To hold otherwise would ignore the requirement that a plaintiff asserting a battery claim—whether directly or as the basis of a wrongful death claim—must prove all of the elements of that claim, including that an unauthorized touching occurred. Accordingly, the district court did not err by requir-

---

[2] In *Davis*, the court included the "without legal justification" language in the definition of "willful and wanton" rather than in the description of the alleged willful and wanton act, but the effect was the same—the burden was placed on the plaintiff to prove that the officer acted without justification, rather than on the defendants to prove that the shooting was legally justified.

ing Wilson to prove that Officer Hurman lacked justification to shoot Barriera.

Given this analysis, the resolution of the second issue raised by Wilson is a foregone conclusion. Wilson argues that the district court should not have instructed the jury on justification at all because the defendants did not plead it as an affirmative defense. In the absence of a properly raised affirmative defense, Wilson argues, the defendants should not have been permitted to avoid liability for wrongful death based upon the presence of a legal justification for the shooting. While justification, or self-defense, can be an affirmative defense, in this case lack of justification was part of what Wilson was required to prove in order to demonstrate that Officer Hurman willfully and wantonly committed battery rather than a legally authorized touching; therefore, the fact that the defendants did not assert the affirmative defense of justification is of no moment. *See Davis*, 8 N.E.3d at 144 (rejecting the same argument and noting that the defendants "presented evidence that Officer Garza's intentional shooting of Hamilton was not 'willful and wanton' because he acted in self-defense").

Finally, Wilson argues that the definition of "willful and wanton" used by the district court was erroneous. The Immunity Act provides as follows:

> "Willful and wanton conduct" as used in this Act means a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property.

745 ILCS 10/1-210. Wilson argues that, given the definition of willful and wanton, "[i]f a defendant admits that [he] intended to harm someone, then [he has] conceded that [his] conduct was willful and wanton. In fact, because Defendant Herman [sic] admitted that he intentionally shot the decedent, then there was no need to instruct on willful and wanton at all." Appellant's Br. at 41. This argument also is foreclosed by the holding of *Davis*; indeed, the court in that case specifically rejected the plaintiff's proposed instruction because it "would have incorrectly made defendants automatically liable for the intentional shooting without accounting for the affirmative defense of tort immunity." *Davis*, 8 N.E.3d at 148.

Wilson also objects to the fact that the district court's instruction defining "willful and wanton conduct" omitted the reference to "actual or deliberate intention to cause harm" found in the statutory definition which, she argues, required her to "argue to the jury that it should look into Defendant's Herman [sic] head and determine if he was consciously disregarding the safety of 'others' instead of simply pointing out that Defendant Herman [sic] admitted he intentionally harmed the decedent." Appellant's Br. at 41–42. Any error in the instruction used by the district court is harmless. With regard to Wilson's excessive force claim, the jury was instructed that "[a]n officer may use deadly force when a reasonable officer, under the same circumstances, would believe that the suspect's actions placed him or others in the immediate vicinity in imminent danger of death or serious bodily harm." In finding against Wilson on that claim, the jury necessarily found that Wilson did not prove that the shooting was without legal justification. Because Wilson was required to make the same showing in order to prevail on

her wrongful death claim, that claim was doomed regardless of how the district court defined willful and wanton.

## B. Evidentiary Rulings

Wilson also argues that the district court made several erroneous evidentiary rulings. We review the trial court's evidentiary rulings for an abuse of discretion. *Estate of Escobedo v. Martin*, 702 F.3d 388, 399 (7th Cir. 2012). "We will reverse only if no reasonable person would agree with the trial court's ruling and the error likely affected the outcome of the trial." *Perry v. City of Chicago*, 733 F.3d 248, 252 (7th Cir. 2013).

### 1. Allowing testimony regarding Barriera's drug and alcohol use

Wilson called Dr. Sheldon Greenberg, a psychiatrist who treated Barriera for several years, to testify during the trial. Just before Dr. Greenberg took the stand, Wilson orally moved *in limine* to preclude him from being asked about Barriera's marijuana and alcohol use. In making the motion, Wilson's counsel represented that the only mention of substance abuse by Barriera in Dr. Greenberg's notes was a single progress note from July 2003; she argued that this isolated incident was irrelevant to the issues in the case in light of the lack of evidence that Barriera had drugs or alcohol in his system at the time of the shooting. Defense counsel represented (correctly) to the district court that the psychiatrist's notes indicated that Barriera's marijuana and alcohol use was not limited to only one instance. The district court denied Wilson's motion *in limine*, finding that it was "only proper that the jury gets an entire picture of the decedent in this case." Trial Tr. at 148.

Given the court's ruling, Wilson's counsel decided to address the issue of Barriera's drug and alcohol use with Dr. Greenberg on direct examination. Dr. Greenberg testified that when he first met with Barriera in July 2003, he reported using a relatively small amount of marijuana on occasion and using alcohol to "numb the voices" in his head. *Id.* at 159. Dr. Greenberg opined that Barriera's marijuana use was not heavy enough to have aggravated his psychotic symptoms. Nonetheless, Dr. Greenberg's treatment recommendation included eliminating all marijuana and alcohol use. Dr. Greenberg testified that there was no indication that marijuana or alcohol use had ever made Barriera violent, but explained that it could "have a disinhibiting effect where he might become more upset or easily irritated with others." *Id.* at 173. In April 2005, Barriera reported to Dr. Greenberg that he had gotten into a fight after drinking "two or three vodkas"; typically at that time he drank an average of only one beer per week. *Id.* at 171–72, 183. On cross-examination, Dr. Greenberg explained that he did not believe that Barriera's substance abuse "led to a significant exacerbation of symptoms … [b]ut there is a risk of [sic] with significant binge drinking of alcohol or severe marijuana intoxication that it could be an exacerbation of symptoms." *Id.* at 181. He also testified that in June 2006 Barriera reported that he had blacked out from drinking alcohol on his birthday. On his final visit with Dr. Greenberg, in August 2006, Barriera reported that he continued to drink beer and occasionally binged on alcohol.

The only ground Wilson gave for her motion *in limine* regarding Dr. Greenberg was that "what drugs or alcohol he may have self-reported four years before this incident happened" was irrelevant given the fact that there was no evi-

dence that he had drugs or alcohol in his system at the time of the shooting. *Id.* at 145. Given Dr. Greenberg's testimony, the basis for Wilson's objection was factually inaccurate. Wilson made no argument at trial regarding the relevance of the evidence of more recent alcohol use. Even if she had made the proper argument, the standard for relevance under the Federal Rules of Evidence is a liberal one; pursuant to Rule 401, "testimony is relevant as long as it 'has any tendency to make a fact more or less probable' than it would otherwise be." *Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 768 (7th Cir. 2013) (quoting Fed. R. Evid. 401). Given this liberal standard, we cannot say that the district court abused its discretion in finding evidence regarding Barriera's past drug and alcohol use relevant. The jury was instructed that, if it found in favor of Wilson on her wrongful death claim, it was to assess damages for the loss of society suffered by Barriera's mother and brother, which the court properly defined as the loss of "the mutual benefit that each family member receives from the other's continued existence, including love, affection, care, attention, companionship, comfort, guidance and protection." The fact that Barriera—if only occasionally—used drugs and alcohol against the advice of his psychiatrist, when doing so had the potential to exacerbate the symptoms of his schizophrenia, was relevant to the jury's loss of society assessment; it was, as the district court said, part of the "entire picture" of who Barriera was.

On appeal, Wilson's primary argument is that permitting this testimony was "overly prejudicial" and that "[a]s a general rule probative value from evidence that a Plaintiff or Decedent may engage in alcohol or drug use is substantially outweighed by its prejudicial effect." Appellant's Br. at 44 (citing *Mankey v. Bennett*, 38 F.3d 353, 360 (7th Cir. 1994)).

Wilson did not make this argument at trial and therefore has waived it.

> To preserve an issue for appellate review, a party must make a proper objection at trial that alerts the court and opposing party to the specific grounds for the objection. An objection is proper when a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context. Neither a general objection to the evidence nor a specific objection on other grounds will preserve the issue for review. When a defendant does not object to the admission of evidence during the trial, the objection is waived and cannot be raised for the first time in a motion for new trial or on appeal.

*Naeem v. McKesson Drug Co.*, 444 F.3d 593, 610 (7th Cir. 2006) (internal citations and quotation marks omitted) (holding that when the only basis for objection at trial was relevance, additional basis raised for the first time in a post-trial motion was waived).

In any event, *Mankey* does not stand for the "general rule" for which Wilson cites it; in that case, the court noted that "the only rationale for admitting the evidence was to enable the expert witness to offer an opinion about how Mankey's drug and alcohol abuse would affect his life expectancy and future earning capacity." *Mankey*, 38 F.3d at 360. However, the trial court excluded the defendant's expert because he was not disclosed in a timely manner. Accordingly, the rationale for admitting the evidence no longer existed and, "[u]nder [those] circumstances, any probative value of that substance abuse evidence was substantially

outweighed by the danger of unfair prejudice." *Id.* A different rationale for admitting the evidence existed here, and Wilson has failed to articulate how its probative value was outweighed by its potential prejudice in this case.

Wilson also argues that the trial court erred in overruling her objection to a question the Defendants asked medical examiner Ponni Arunkumar, M.D. During Wilson's direct examination, Dr. Arunkumar testified that the toxicology reports performed as part of the autopsy of Barriera found no drugs or alcohol in his system. The defendants asked Dr. Arunkumar on cross-examination whether the blood transfusions Barriera received in the hospital could have affected "any alcohol level that had been in his blood if there was alcohol in it." Trial Tr. at 221. Dr. Arunkumar responded that "it would dilute any substance that was in the body." *Id.* We see no error in permitting this testimony; it was not prejudicial to permit the defendants to question the significance of the negative toxicology report after Wilson elicited testimony about it.

### 2. *Allowing evidence that Barriera had a knife strapped to his thigh*

Wilson filed a motion *in limine* seeking to bar evidence that Barriera had a six-inch throwing knife taped to his thigh when he was shot, arguing that it was irrelevant and prejudicial because Hurman did not know about it when the shooting occurred. The district court denied the motion and admitted the evidence.

Wilson, citing *Palmquist v. Selvik*, 111 F.3d 1332, 1339 (7th Cir. 1997), argues that the district court's ruling was erroneous because the determination of whether Hurman acted

reasonably when he shot Barriera depends entirely on what Hurman knew at the time he made the decision to shoot. This is a true statement of the law. *See, e.g., id.* ("[W]hen considering a charge of excessive force under the Fourth Amendment, evidence outside the time frame of the shooting is irrelevant and prejudicial."). However, where, as here, the actions of the plaintiff (or decedent) immediately prior to the shooting are disputed, evidence that tends to make one side or the other's version of the events more likely to be accurate is admissible for that purpose. For example, in *Common*, this court held that evidence that the decedent had packets of drugs in his mouth at the time he was shot by a police officer was admissible because

> the packets of drugs in Smith's mouth made it more likely that Smith acted in the way that Officer Nelson contended he acted as opposed to the way that other witnesses contended he did. The fact that Smith possessed illegal drugs gave him a motive to avoid their discovery—by hiding them in his mouth, for example. This made it more likely that he would initially turn from the officer and hide his hands as he took the drugs from his pockets and placed them in his mouth. It also made it more likely that Smith might engage in a flight or fight response—either turning away from the police, as he seemed to have done initially, or turning toward the officer and grabbing for his gun.

*Common*, 661 F.3d at 945; s*ee also Saladino v. Winkler*, 609 F.2d 1211, 1214 (1979) (evidence of plaintiff's intoxication at time of shooting was admissible because it "tends to make more probable that the plaintiff acted as the defendant contended he did or that plaintiff otherwise conducted himself in such

a manner as to place the defendant reasonably in fear of his life") (*quoted in Palmquist*, 111 F.3d at 1342).

Barriera's actions leading up to the shooting were highly contested. The officers testified that he lunged at them with a knife in his hand, causing them to fear for their lives. Wilson argued that the bullet trajectory and blood evidence compelled the conclusion that Barriera was sitting on his bed when he was shot. The fact that Barriera had a knife taped to his thigh makes it more likely that the officers' version is correct; it suggests that Barriera was prepared for battle and more likely to act aggressively. Wilson concedes as much, acknowledging that "[i]t is both reasonable and probable that jurors inferred that Barriera intended to resist or otherwise act out in violence against the officers by strapping a knife to his leg prior to the officers' arrival." Appellant's Br. at 47–48. Wilson argues that the evidence was highly prejudicial because it is likely that the jury considered it when assessing whether the decision to shoot Barriera was reasonable. We disagree. "We presume that juries follow the instructions given them by the court," *Soltys v. Costello*, 520 F.3d 737, 744 (7th Cir. 2008), and here the jury was instructed with regard to the issue of reasonable force as follows: "You must make this decision based on what the officer knew at the time of the use of force, not based on what you now know." Trial Tr. at 1140. Given the testimony about the knife being found in the ambulance hidden under Barriera's clothing, the jury was aware that Hurman did not know about that knife when he shot Barriera and therefore its existence was not relevant to whether his actions were reasonable.

There was no error in admitting evidence regarding the knife.[3]

### 3. *Barring certain questions of Defendant Jerome*

Finally, Wilson objects to the fact that the district court sustained the defendants' objections to questions she posed to Jerome about the possible disciplinary ramifications to him if the jury found in favor of Wilson and about certain reports that were completed by the officers after the shooting. Even assuming those rulings were an abuse of discretion, Wilson forfeited any challenge to them because her counsel made no offer of proof as required to preserve such an error for appeal. *See U.S. v. Muoghalu*, 662 F.3d 908, 913 (7th Cir. 2011) (by giving "no indication of what he thought such questioning would produce that would be material" at trial, party forfeited a challenge to exclusion of evidence) (citing Fed. R. Evid. 103(a)(2)). The requirement that an offer of proof be made is essential in two ways. First, it gives the trial judge the information he or she needs to make an informed ruling. Judges are not mind readers, and even the most prepared judge cannot possibly know as much about a party's case (and strategy) as the lawyer who is trying it. When the relevance of a particular line of questioning is not self-evident, an explanation of what the anticipated answers will be and how those answers advance the party's theory of the case is critical. Second, without that explanation there is no way for a reviewing court to determine whether exclud-

---

[3] Wilson also raises the fact that the district court denied her motion to bar testimony that after the shooting Barriera gave Officer Cummens the finger. Assuming this evidence was improperly admitted, we cannot imagine how it was prejudicial; few people would be the model of civility having just been hit by a taser and shot twice.

ing the evidence was prejudicial. *Peals v. Terre Haute Police Dept.*, 535 F.3d 621, 630 (7th Cir. 2008) ("If the party objecting to the exclusion of the evidence fails to make a proper offer of proof, there is no basis for a finding of prejudice.") (citation and quotation marks omitted). Because in this case we do not know what testimony the disallowed lines of questioning would have elicited, we cannot find an abuse of discretion by the trial court.[4]

### III. CONCLUSION

We AFFIRM the judgment of the district court.

---

[4] We recognize that these issues apparently were discussed at a pretrial conference that was not on the record, and therefore the trial court may have had an understanding of Wilson's position with regard to the precluded lines of questioning that is not made clear in the record. The fact remains that Wilson did not make an offer to prove what Jerome's testimony would have been had the questioning been permitted.