In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-2957

OCTAVIA MITCHELL,

*Plaintiff-Appellant,*

*v.*

CITY OF CHICAGO, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11-CV-2741 — **Sharon Johnson Coleman**, *Judge.*

ARGUED FEBRUARY 6, 2017 — DECIDED JULY 5, 2017

Before ROVNER and WILLIAMS, *Circuit Judges*, and CONLEY, *District Judge.*[*]

WILLIAMS, *Circuit Judge*. On April 24, 2010, Chicago Police Officers pulled over eighteen year old Izael Jackson ("Jackson") for a missing front license plate. He was shot three times in the back by the officers and died the next day. Jackson's

[*]Of the Western District of Wisconsin, sitting by designation.

mother, Octavia Mitchell ("Mitchell"), brought a civil suit for excessive force and wrongful death against the City of Chicago and the officers for the officers' traffic stop turned homicide. After months of discovery the case went to trial. The jury returned a verdict in favor of the defendants and the district court entered its judgment.

On appeal, Mitchell argues that the trial court erred by excluding evidence or argument relating to a failure to test DNA swabs recovered from the scene of the shooting. But we find no error in the district court's evidentiary rulings. The only issue before the jury was whether the officers were justified in shooting Jackson. A lack of DNA evidence, without more, would not tend to prove or disprove the officers' justification. As the district court noted, there was nothing tying the shooting officers to any missing DNA evidence and it would be unfair to assume that testing of the DNA swabs would have helped, or harmed, Mitchell's case. Therefore, we affirm the district court's rulings which quashed Mitchell's subpoena to the Illinois State Police and excluded evidence relating to potential DNA evidence.

## I. BACKGROUND

On the evening of April 24, 2010, Sergeant Cascone and Officer Belcher, members of the Chicago Police Department's Mobile Strike Force, were on patrol in a marked squad car. Officers Lopez and Gonzalez, in a second marked squad car, were behind them following in a "wolf pack" formation.[1]

---

[1] The term "wolf packing" was used throughout the trial, and describes when officers work as a team such that one car has a tail car that allows for instant backup.

They spotted a white Buick, without a front license plate, traveling north on State Street. The officers decided to stop the car for the simple traffic violation and put on flashing lights. They followed the car onto a neighborhood street and it slowed and stopped. Izael Jackson, a passenger, got out.

According to the officers' testimony, Jackson immediately began firing a weapon in the direction of the squad cars. Officer Belcher returned fire through the windshield of his patrol car, while Sergeant Cascone radioed for backup. At this point, the car sped away, leaving Jackson behind. While looking over his shoulder and shooting in the direction of the police cars, Jackson began running away from the officers. As Jackson fled, Officer Belcher fired two or three shots at him through the windshield of the police car. Officer Gonzales raised his rifle and began to fire at Jackson's back as well. Jackson fell to the ground and stopped moving. The officers approached and Officer Lopez kicked the gun, later determined to be a Glock Model 19 9-millimeter semi-automatic handgun, out of Jackson's hand and handcuffed him. Paramedics were called, and Jackson was transported to Stroger Hospital where he died the next morning.

Following Jackson's death, Mitchell filed this civil suit bringing claims of excessive force under the Fourth Amendment and the Illinois wrongful death statute against the City of Chicago and the officers. Mitchell alleged that the shooting death of her son was unjustified because Jackson never had a gun and never shot at the officers.

A jury trial was held, and Mitchell presented two eyewitnesses, Taza Williams and her mother, Sandra Williams. Taza testified that she watched the shooting from her mother's window and saw four or five police officers chasing Jackson

before shooting him. She also stated that it was dark but it looked like Jackson did not have a gun. After Jackson fell to the ground, she saw the police officers "dragging him, kicking him, and stomping him." Sandra, who was also watching through the window of her home, testified that she clearly saw Jackson run away from the police officers with his hands up in the air and he did not have a gun. She also stated that she saw Jackson's mouth moving but could not hear what he was saying. But she also stated that she clearly heard Jackson say he did not have a gun.

The City highlighted inconsistencies in the testimony of Taza and Sandra and presented evidence that undermined their credibility. The City also offered expert testimony that showed gunshot residue was found on Jackson's hand, which indicated that he was holding or in close proximity to a discharged firearm. Expert testimony also revealed that sixteen expended shell casings found at the scene came from the Glock Model 19 9-millimeter, corroborating the officers' testimony that the gun was shot from Jackson's location. There were no fingerprints found on the Glock Model 19 9-millimeter gun, which the City's expert explained was not unusual given the smooth surface of the gun and rain on the evening of the shooting.

The crime scene investigator, John J. Miller, who collected evidence from the scene, testified that he took DNA swabs from the Glock Model 19 9-millimeter weapon, which he recovered at 6102-6104 S. Prairie Street. For unknown reasons, the DNA swabs were never tested by the Illinois State Police, the agency responsible for testing forensic evidence in this case. Mitchell failed to identify experts challenging the City

experts' testimony and did not seek testing of the DNA swabs.

At the close of evidence, a directed verdict was entered as to Officers Cascone and Lopez, the two police officers who did not fire weapons at Jackson. After short deliberations, the jury returned a verdict in favor of the City, Sergeant Belcher, and Officer Gonzalez on all claims. Mitchell moved for a new trial, arguing that the district court erred in its evidentiary rulings. The district court denied the motion, and Mitchell filed this appeal.

## II. ANALYSIS

The ultimate outcome of this confrontation, which began with a minor traffic stop, is undoubtedly tragic. A young man was shot in the back and killed, and a mother now mourns her son. The question before the jury was whether the shooting was justified, and the jury said yes. Now, the narrow issue on appeal is whether the district court's evidentiary rulings, relating to DNA evidence, were proper. We address each of these rulings in turn.

### A. No Error to Quash Illinois State Police Subpoena

Mitchell first challenges the district court's decision to quash her subpoena to the Illinois State Police. This court reviews a district court's decision of whether to quash a subpoena for abuse of discretion. *Ott v. City of Milwaukee*, 682 F.3d 552, 556 (7th Cir. 2012).

After more than four months of discovery deadline continuances sought by Mitchell, the district court set fact discovery to close on January 18, 2013 and stated that there would be no further extensions. On August 5, 2013, several months after the cutoff, Mitchell served a subpoena on the Illinois

State Police Division of Forensic Sciences requesting the deposition of a "person with knowledge regarding the policies and practices of DNA testing and determining as to when and if testing is conducted on DNA samples collected by Chicago police officers…" The City moved to quash the subpoena as untimely, and the court agreed.

Mitchell argues that the court's ruling was in error because DNA evidence would have shown whether Jackson held the gun and, consequently, whether the officers were reasonably fearful of bodily harm. Mitchell argues that her case depended on showing that Jackson did not hold a gun, and DNA evidence could have proven that Jackson did not hold the gun. While DNA evidence likely would have been relevant, there was no DNA evidence because neither the Illinois State Police nor Mitchell sought to test the swabs taken from the gun. Furthermore, the district court did not quash a subpoena seeking DNA evidence as the subpoena only sought information from a third party about its testing protocols.

However, we need not address the potential relevance of DNA evidence, since the district court quashed Mitchell's subpoena because it was too late. District judges are authorized to manage the schedule of cases before them, including imposing deadlines for discovery. Fed. R. Civ. P. 16(b). These deadlines should only be modified for good cause. *Id*. Even if Mitchell's subpoena sought relevant evidence, Mitchell failed to offer good cause for the subpoena's tardiness. As the district court noted, there was ample opportunity for Mitchell to seek discovery of the Illinois State Police's testing protocol, or tests of DNA swabs taken from the gun. Mitchell failed to do so in the allocated time frame. Instead, she waited several additional months past the deadline with no good cause for this

delay. Therefore, the district court was within its discretion quashing Mitchell's subpoena. *Wollenburg v. Comtech Mfg. Co.*, 201 F.3d 973, 978 (7th Cir. 2000).

### B. Exclusion of Alleged Investigatory Cover-up was Proper

On September 19, 2013, before trial began, the City moved *in limine* to bar Mitchell from making argument or questioning witnesses regarding the lack of testing of DNA swabs from Jackson's alleged gun by Illinois State Police Forensic Services Laboratory. The City argued that such evidence would be irrelevant and unfairly prejudicial because the City and the officers had nothing to do with testing DNA (the decision not to test was made by the Illinois State Police) and there was no reason to believe DNA evidence would have helped Mitchell's case. Mitchell asserted that DNA evidence, had it been tested, might have shown that Jackson's DNA was not on the gun and a failure to test the gun was evidence of a cover-up. The district court granted the City's motion and excluded evidence and argument relating to a lack of DNA testing for lack of relevance.

We review the district court's ruling on the City's motion *in limine* for an abuse of discretion. *Wilson v. City of Chicago*, 758 F.3d 875, 881 (7th Cir. 2014). "We will reverse only if no reasonable person would agree with the trial court's ruling and the error likely affected the outcome of the trial." *Perry v. City of Chicago*, 733 F.3d 248, 252 (7th Cir. 2013).

We find no abuse of discretion in the district court's ruling. At trial, Mitchell was required to prove that the defendant officers did not reasonably believe that Jackson "pose[d] a threat of serious physical harm, either to the officer[s] or to

others," *Tennessee v. Garner*, 471 U.S. 1, 11 (1985), or, under state law, that the officers lacked justification for using deadly force. *Wilson*, 758 F.3d at 880. Argument or evidence demonstrating unavailability of DNA evidence would not tend to make the existence of any fact that is of consequence "more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. The fact "of consequence" was whether the officers were reasonably fearful of Jackson at the time of the shooting—evidence reflecting the investigatory decisions of the Illinois State Police *after* the City officers' shooting could not shed light on this fact. The state agency's policies cannot impute anything onto the city officers' mental state when they pulled their triggers. Such evidence may expose a state agency in need of victim rights reform, but without more, it has no tendency to prove liability under either the Fourth Amendment or Illinois law. *See, e.g.*, *Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006) ("[T]his court has consistently held that 42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of … departmental regulations and police practices."). In our view, the district court correctly found that testimony relating to a lack of DNA evidence would not be relevant and the evidence was properly excluded.

### III. CONCLUSION

The decisions below are AFFIRMED.