**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 6, 2019[*]
Decided February 6, 2019

**Before**

DANIEL A. MANION, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 18-2079

| | |
|---|---|
| VICTOR HOLM, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Western District of Wisconsin. |
| *v.* | No. 16-cv-00794 |
| CAPTAIN CASIANA, et al., *Defendants-Appellees*. | Barbara B. Crabb, *Judge*. |

### O R D E R

Suspecting that inmate Victor Holm had used drugs illegally, guards and medical staff at the Wisconsin Department of Corrections required him to take a blood test. Holm later sued them, asserting under 42 U.S.C. § 1983 that the blood draw violated the Fourth Amendment. The district court determined that the defendants

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

were entitled to qualified immunity and entered summary judgment on their behalf. Because the prison staff did not violate a clearly established federal right, we affirm.

We recite the facts in the record, construed in Holm's favor. *Seiser v. City of Chicago*, 762 F.3d 647, 653 (7th Cir. 2014). Holm was in his cell and on pain medication on January 10, 2014. According to the prison's correctional staff, a confidential informant reported that day that Holm "had not been acting normal," "pills had been used," and he "believed Holm was high." (On appeal Holm asserts without evidence that no informant said this to the staff.) After a corrections officer went to check on Holm in his cell, she reported that he was struggling to sit upright, did not answer her questions, and had glazed-over eyes. A supervising officer assessed Holm and observed that he was "not acting like himself" because he could not focus on conversation, keep his eyes open, or maintain his balance. A nurse evaluated him, too. He recorded that Holm had "no apparent abnormalities" and was able to do multiple squats, but he also told a colleague that Holm was "displaying odd behavior." Holm denies the accounts of the staff who said that his behavior that day was abnormal.

Prison staff ordered Holm to give blood and urine samples to be tested for drugs. Holm objected to the blood test, but he acquiesced after the supervising officer explained that if he refused to take it, he could be disciplined for using drugs. *See* WIS. ADMIN. CODE § DOC 303.60(3). A nurse in the healthcare services unit took the sample.

Holm seeks damages from the prison staff involved in extracting his blood, accusing them of violating the Fourth Amendment. The defendants moved for summary judgment, raising the defense of qualified immunity, among other defenses. Qualified immunity shields government officials performing discretionary functions from damages for conduct that did not violate a clearly established federal right, "defined with specificity." *City of Escondido v. Emmons*, No. 17-1660, slip op. at 2–3 (U.S. Jan. 7, 2019); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The district court granted the defendants' motion. It concluded that in January 2014, "it was not clearly established that the Fourth Amendment prohibited defendants from taking a blood sample from plaintiff under the circumstances presented."

On appeal, Holm raises two challenges to the district court's application of qualified immunity, but neither is meritorious. First, he asserts that a policy of the Wisconsin Department of Corrections permits prison officials who suspect inmates of using drugs to conduct urinalysis, but not blood tests. Because, in his view, the defendants violated the state's policy, Holm concludes that they cannot benefit from qualified immunity. But an official's violation of a policy does not remove the

protection of qualified immunity unless the plaintiff's cause of action is based on that violation. *Davis v. Scherer*, 468 U.S. 183, 194 n.12 (1984); *Stevens v. Umsted*, 131 F.3d 697, 707 (7th Cir. 1997). And that is not the case with Holm's suit because a violation of a state policy does not give rise to a Fourth Amendment claim. *See Snowden v. Hughes*, 321 U.S. 1, 11 (1944); *Mitchell v. City of Chicago*, 862 F.3d 583, 587 (7th Cir. 2017).

Second, Holm argues that, apart from the prison's policy, drawing blood from a prisoner for drugs was an unreasonable search, but no clearly established law under the Fourth Amendment says so. True, a blood draw is a search, *see Schmerber v. California*, 384 U.S. 757, 767 (1966), but a search of a prisoner is reasonable if the need for it outweighs the intrusion on the inmate. *See Bell v. Wolfish*, 441 U.S. 520, 558–59 (1979). This reasonableness test is "not capable of … mechanical application." *Id* at 559. Accordingly, the scope of Fourth Amendment protections for prisoners from unwelcomed medical procedures is "uncertain." *Sparks v. Stutler*, 71 F.3d 259, 261 (7th Cir. 1995); *see also United States v. Shaw*, 824 F.3d 624, 629 (7th Cir. 2016) (prisoners have "highly curtailed Fourth Amendment protection"); *King v. McCarty*, 781 F.3d 889, 900 (7th Cir. 2015) (protections for prisoners are present to "some degree"). Because of this uncertainty, we ruled in *Sparks* that the forced catheterization of an inmate for urinalysis—a procedure more invasive than a blood draw, *see* 71 F.3d at 261—deserved qualified immunity. Following *Sparks,* qualified immunity applies here, too.

Holm responds that the search was unreasonable because, when the evidence of his behavior is construed in his favor, it gave prison officials *no* reason to draw his blood. We see two problems with this argument. First, the confidential informant, whose existence and observation Holm has no basis to deny, reported seeing Holm take pills. That report gave the officials *some* reason to suspect Holm of using drugs. Second, and apart from that report, the case law does not clearly establish that a single blood draw from an inmate to test for drugs violates the Fourth Amendment. Indeed, the Supreme Court has ruled that strip and body cavity searches of prisoners are permissible in certain circumstances even with *no* suspicion of wrongdoing. *See Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 330 (2012) (strip searches upon entering prison); *Bell*, 441 U.S. at 558 (visual body cavity inspections after contact visits).

Holm argues that, because the search here involved a needle inserted beneath his skin, it was more intrusive than a body cavity search. We see conflicting signals in the case law on this point. *Compare Missouri v. McNeely*, 569 U.S. 141, 148 (2013) (blood draws "implicate[] an individual's most personal and deep-rooted expectations of

privacy" (internal quotation omitted) *with Schmerber*, 384 U.S. at 771 (blood draws involve "virtually no risk, trauma, or pain"). It was thus not clearly established in 2014 that a blood draw was more invasive than a strip or body cavity search. And even if it were, the arguably greater intrusiveness of a blood draw does not clearly establish that the blood test of a prisoner for drugs violates the Fourth Amendment. *See Green v. Berge*, 354 F.3d 675, 679 (7th Cir. 2004) (Easterbrook, J., concurring) ("Testing prisoners' blood, urine, saliva, or hair for drugs is routine and does not require individual suspicion.")

Holm cites *Birchfield v. North Dakota*, 136 S. Ct. 2160 (2016), for a contrary conclusion, but that case does not help him. In *Birchfield*, the Supreme Court ruled that the reasonableness of blood draws from civilians under arrest for drunk driving must be assessed in relation to other available, less invasive tests. *Id.* at 2184. Even if *Birchfield* now influences how we should view blood draws from inmates, it was decided after the blood draw in this case. Therefore, it does not affect our analysis. *See Shoop v. Hill*, No. 18-56, slip op. at 4 (U.S. Jan. 7, 2019); *Carter v. Huterson*, 831 F.3d 1104, 1108–09 (8th Cir. 2016). Qualified immunity thus was warranted.

We have considered Holm's remaining arguments, and none has merit.

AFFIRMED